FILED
COURT OF APPEALS
DIVISION II

2013 MAR -8 AM 11: 54

STATE OF WASHINGTON

BY_____
DEPUTY

**IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON**

**DIVISION II**

| | |
|---|---|
| STATE OF WASHINGTON, | No. 43511-0-II |
| Respondent, | |
| v. | |
| DOUGLAS L. BAUER, | PUBLISHED OPINION |
| Appellant. | |

PENOYAR, J. — The State charged Douglas Bauer with third degree assault after his girl friend's nine-year-old son accidentally shot a classmate with Bauer's gun. The trial court denied Bauer's *Knapstad*[1] motion and vagueness challenge. On discretionary review, he argues that (1) the definition of "cause" in the third degree assault statute requires an "affirmative act"; (2) his actions were not the proximate cause of the assault; (3) he can only be held liable under the complicity statute; and (4) the assault statute is vague as applied to him. Because the State alleges Bauer performed an affirmative act, we reject his first claim. As to his second claim, we conclude "cause" legally means proximate cause. Proximate cause, in turn, involves two elements: actual cause, which requires a factual determination by the jury, and legal cause, a legal issue we address by reviewing legal precedent. On this claim, we conclude the State has alleged sufficient facts for the jury to find both actual cause and the facts supporting legal cause, thus the trial court properly denied Bauer's *Knapstad* motion. Additionally, the complicity statute does not bar liability here, and the third degree assault statute is not unconstitutionally vague because all of the elements are defined in statutes or case law.

---

[1] *State v. Knapstad*, 107 Wn.2d 346, 729 P.2d 48 (1986).

43511-0-II

## FACTS

On February 22, 2012, nine-year-old TC brought a .45 caliber handgun to school. Near the end of the day, TC reached into his backpack and accidentally pulled the trigger, injuring his classmate, AK-B.

The gun was registered to Bauer, TC's mother's boyfriend. TC does not live with his mother, but he and his siblings would occasionally visit and stay the night. TC took the gun while he was visiting his mother the weekend before the shooting. TC told the police that he took the gun off the dresser in Bauer and his mother's downstairs bedroom while the rest of his family was upstairs. TC and his siblings often sleep in that bedroom, and they explained that they are allowed to access the downstairs portion of the house, including the bedroom, without supervision.

The children also stated that there are multiple guns throughout the house, including a shotgun in the downstairs bedroom, a handgun on the downstairs dresser, a handgun on the computer desk, a handgun under the couch, and a handgun in the glove compartment of the car. None of the guns are in areas forbidden to the children. Bauer and TC's mother both warned the children to never touch the guns because they were loaded. The police searched the house after the shooting and found a loaded handgun next to the computer, a loaded shotgun in the downstairs bedroom, an unloaded handgun in Bauer's car's glove compartment, and ammunition in a dresser drawer. Bauer told the police that he did not know TC had stolen the gun. He did admit that he knew—before TC left his house that weekend—that TC had taken money from the glove compartment of Bauer's vehicle.

TC's guardian stated that he does not allow guns in his home. TC told the police that he had never held or loaded a gun before and that no one had ever taught him how to use a gun.

2

On March 20, 2012, the State charged Bauer with third degree assault and unlawful possession of a firearm. Bauer filed a *Knapstad* motion to dismiss both charges. Under *Knapstad*, the trial court may dismiss a criminal case before trial when it is clear from the facts that the State cannot prove a necessary element of the crime. *State v. Sanchez*, 166 Wn. App. 304, 307, 271 P.3d 264 (2012). Bauer also challenged the third degree assault statute as unconstitutionally vague. The trial court dismissed Bauer's unlawful possession charge, but it denied his *Knapstad* motion and vagueness challenge with respect to the assault charge. Bauer filed a petition for discretionary review. The trial is stayed pending our decision.

## ANALYSIS

I.   *KNAPSTAD* MOTION

Bauer argues that we should reverse the trial court's dismissal of his *Knapstad* motion because there is no evidence that he assaulted the victim. Specifically, he argues that the assault statute requires him to perform an affirmative act, there is no proximate cause, and he can only be held criminally liable for another's acts under the complicity statute. We hold that the trial court properly denied Bauer's *Knapstad* motion because "cause" in the third degree assault statute means proximate cause and involves issues of foreseeability that are the province of the jury. Additionally, the complicity statute does not bar Bauer's liability.

To prevail on a *Knapstad* motion, the defendant must show that there are no material facts in dispute and that the undisputed facts do not establish a prima facie case of guilt. *Knapstad*, 107 Wn.2d at 356. A trial court may dismiss a criminal charge under *Knapstad* if the State's pleadings and evidence fail to establish prima facie proof of all elements of the charged crime. *State v. Sullivan*, 143 Wn.2d 162, 171 n.32, 19 P.3d 1012 (2001). The trial court shall view all evidence and make all reasonable inferences in the light most favorable to the State.

3

CrR 8.3(c)(3); *State v. Jackson*, 82 Wn. App. 594, 608, 918 P.2d 945 (1996). It may not weigh conflicting statements, and it may not base its decision on the statement it finds most credible. CrR 8.3(c)(3). We will uphold the trial court's dismissal of a charge on a *Knapstad* motion if no rational fact finder could have found the elements of the charged crime beyond a reasonable doubt. *State v. O'Meara*, 143 Wn. App. 638, 641, 180 P.3d 196 (2008).

Bauer argues that he cannot be convicted of assault because his alleged actions—keeping loaded firearms where children could easily take them—were not sufficiently a "cause" of the shooting. To explain why we disagree, we must explain how causation is treated in criminal cases.

We are all familiar with cause and causation in our daily lives. When a tree blows down in a storm, we expect that wind was the cause. We also recognize that there may be more than one cause of an event. Perhaps the tree blew down because of both the wind and the saturated soil. The law refers to cause of this sort as "actual cause." *See Hartley v. State*, 103 Wn.2d 768, 778, 698 P.2d 77 (1985) (referring to actual cause as "cause in fact").

In society, we are also familiar with attributing moral blame for an event. In assessing blame, we take into account many factors. How direct was the cause? Was the person aware of the risk? Should the person have realized the consequences that resulted? Using a similar line of reasoning, the law describes a cause for which a person may be held liable as "legal cause." *State v. McDonald*, 90 Wn. App. 604, 616, 953 P.2d 470 (1998). As in moral assessments of blame, legal cause analysis involves consideration of whether the consequences were apparent and of the actor's state of mind in proceeding in the face of these consequences. "Foreseeability" is the legal catchword for whether the consequences were apparent. The concept of foreseeability is treated similarly in civil and criminal cases. But the state of mind

4

that must be shown to assess blame in criminal cases is higher than in civil cases. In a civil negligence case, the claimant must show merely that the actor was not reasonably careful in view of the apparent risk. *Johnson v. Emp't Sec. Dep't*, 64 Wn. App. 311, 317, 824 P.2d 505 (1992). But in a criminal negligence case, the State must show that the defendant's actions were at least a gross deviation from what a normally careful person would have done. RCW 9A.08.010(1)(d). Finally, as shorthand for situations where both actual and legal cause are present, the law uses the concept of "proximate cause." *Hartley*, 103 Wn.2d at 777. We now apply this roadmap to this case.

We hold that "cause" as used in the third degree assault statute should be construed as "proximate cause" because it has been so construed in similar criminal statutes. Under a proximate cause analysis, the State has alleged facts to support a jury's finding of both actual and legal cause. Additionally, Bauer's arguments are unpersuasive because he performed an affirmative act, his proposed definition of cause comes from distinguishable case law, and the presence of supervening acts is a jury question. Therefore, we affirm the trial court's denial of Bauer's *Knapstad* motion.

A.    Statutory Interpretation

The State charged Bauer with third degree assault. The third degree assault statute requires the State to prove that Bauer "[w]ith criminal negligence, cause[d] bodily harm to another person by means of a weapon." RCW 9A.36.031(1)(d). We must interpret the meaning of "cause" in this statute.

The legislature has provided guidance for construing its criminal statutes. RCW 9A.04.020. The general purposes of the criminal code are "[t]o forbid and prevent conduct that inflicts or threatens substantial harm to individual or public interests;" "[t]o safeguard conduct

5

that is without culpability from condemnation as criminal;" and "[t]o give fair warning of the nature of the conduct declared to constitute an offense." RCW 9A.04.020(1)(a)-(c). With these goals in mind, "[t]he provisions of [the criminal code] shall be construed according to the fair import of their terms but when the language is susceptible of differing constructions it shall be interpreted to further the general purposes stated in this title." RCW 9A.04.020(2).[2]

As noted, the third degree assault statute requires the State to prove that Bauer, "[w]ith criminal negligence, cause[d] bodily harm to another person by means of a weapon." RCW 9A.36.031(1)(d). Cause is not statutorily defined. When a statutory term is undefined, it is given its ordinary meaning, which may be discerned from the dictionary. *State v. Gonzalez*, 168 Wn.2d 256, 263, 226 P.3d 131 (2010). Additionally, courts may look to the common law to define terms not given a statutory definition. *State v. Byrd*, 125 Wn.2d 707, 712, 887 P.2d 396 (1995); RCW 9A.04.060 ("The provisions of the common law relating to the commission of crime and the punishment thereof, insofar as not inconsistent with the Constitution and statutes of this state, shall supplement all penal statutes of this state.").

In the following paragraphs, we apply these rules of statutory interpretation to RCW 9A.36.031(1)(d) and the word "cause." We determine that "cause" means "proximate cause," a common legal concept. Proximate cause contains two elements, actual cause and legal cause. We conclude that, under the meaning ascribed to these terms under Washington law, the State has alleged sufficient facts to support a jury finding that Bauer's alleged conduct caused AK-B's harm.

---

[2] We apply the rule of lenity to construe criminal statutes in the defendant's favor only when the statute is actually ambiguous. *State v. McGee*, 122 Wn.2d 783, 787, 864 P.2d 912 (1993). Moreover, "[a] criminal statute need not set forth with absolute certainty every act or omission [that] is prohibited if the general provisions of the statute convey an understandable meaning to the average person." *State v. Prather*, 30 Wn. App. 666, 670, 638 P.2d 95 (1981).

### B. Cause Means "Proximate Cause"

When criminal statutes require the State to prove a defendant caused a specific result, Washington courts have construed this element to require a showing of proximate cause. For example, the homicide by abuse statute[3] requires proof that the defendant "cause[d] the death" of the victim, and courts have stated that proximate cause is an element of the crime of homicide by abuse. *See State v. Berube*, 150 Wn.2d 498, 510, 79 P.3d 1144 (2003). The second degree murder statute[4] also requires proof that the defendant "cause[d] the death" of the victim, and courts have stated that this requires a showing of proximate cause. *State v. Perez-Cervantes*, 141 Wn.2d 468, 475-80, 6 P.3d 1160 (2000) (discussing the proximate cause requirement). The controlled substances homicide statute[5] requires proof that the controlled substance "result[ed] in the death of the user," and Division Three of this court has held that there is no evidence of legislative intent to distinguish "causing death" from "resulting in death" and that both require a showing of proximate cause. *State v. Christman*, 160 Wn. App. 741, 754, 249 P.3d 680, *review denied*, 172 Wn.2d 1002, 257 P.3d 666 (2011). The first degree robbery statute[6] requires—as one alternative—that the defendant "inflict[] bodily injury" during or in immediate flight from the robbery, and Division One of this court has held that this too requires a showing of proximate cause. *State v. Decker*, 127 Wn. App. 427, 432, 111 P.3d 286 (2005) (stating that crimes that are defined to require specific conduct causing a specified result require a showing of proximate cause).

---

[3] RCW 9A.32.055(1)

[4] RCW 9A.32.050(1)

[5] RCW 69.50.415(1)

[6] RCW 9A.56.200(1)(a)(iii)

As noted above, proximate cause[7] consists of two elements: actual cause and legal cause. *McDonald*, 90 Wn. App. at 612. Actual cause refers to the physical connection between an act and an injury. *Hartley*, 103 Wn.2d at 778. It requires the State to prove that but for the act of the defendant, the harm would not have occurred. *Christman*, 160 Wn. App. at 753 (quoting 1 WAYNE R. LaFAVE, SUBSTANTIVE CRIMINAL LAW § 6.4, at 464 (2d ed. 2003)). Legal cause "involves a determination of whether liability should attach as a matter of law." *McDonald*, 90 Wn. App. at 616 (quoting *Hartley*, 103 Wn.2d at 779).

This definition of cause fits within the general purposes of the criminal code as outlined by the legislature: to protect society from harm while shielding the innocent from culpability. As we discuss below, the State has presented sufficient facts for a jury to find that Bauer's alleged conduct, leaving multiple loaded guns easily accessible to children, is conduct that "inflict[ed] . . . substantial harm" in the form of severe injuries to a child. RCW 9A.04.020(1)(a). Further, courts consistently apply proximate cause analysis to criminal statutes that require the State to prove that the defendant caused a certain result. Since we assume that these cases are available to the public,[8] there was "fair warning" that this conduct might "constitute an offense." RCW 9A.04.020(1)(c).

C.     Proximate Cause: Actual Cause and Legal Cause

Actual cause requires proof that but for the defendant's acts, the injury would not have occurred. *Hartley*, 103 Wn.2d at 778. Generally, actual cause is a jury question, except where

---

[7] The term "proximate cause" is often used imprecisely, leading to confusion. *Hartley*, 103 Wn.2d at 778. Some cases confuse the term "proximate cause" with either actual cause or legal cause alone. *Hartley*, 103 Wn.2d at 778. Here, we refer to proximate cause as the combination of both cause in fact and legal cause.

[8] *State v. Smith*, 111 Wn.2d 1, 7, 759 P.2d 372 (1988).

8

reasonable minds could reach only one conclusion. *State v. Dennison*, 115 Wn.2d 609, 624, 801 P.2d 193 (1990).

Bauer's alleged acts could reasonably be found to be an actual cause of AK-B's injuries. The gun TC brought to school was registered to Bauer. TC explained that he took the gun from Bauer's house. The police searched the house and found multiple loaded guns in locations easily accessible to the children. TC's guardian stated that he did not allow guns in his home. Given these facts, reasonable minds could reach the conclusion that but for Bauer allegedly leaving loaded guns easily accessible to TC, TC would not have brought a gun to school and AK-B would not have been injured.

> Legal causation presents a far more difficult question. Legal cause
>
> rests on policy considerations as to how far the consequences of defendant's acts should extend. It involves a determination of whether liability *should* attach as a matter of law given the existence of [actual cause]. If the factual elements . . . are proved, determination of legal liability will be dependent on "mixed considerations of logic, common sense, justice, policy, and precedent."

*Hartley*, 103 Wn.2d at 779 (quoting *King v. Seattle*, 84 Wn.2d 239, 250, 525 P.2d 228 (1974)). Whether a third degree assault conviction could be obtained where the defendant, as here, allegedly acts with criminal negligence to make a firearm available to an irresponsible person is not addressed in any case law we have found. Arguably, we could preclude liability in this instance using "mixed considerations of logic, common sense, justice, policy, and precedent." *Hartley*, 103 Wn.2d at 779 (quoting *King*, 84 Wn.2d at 250). But we are reluctant to impose our view where the legislature and the case law have already provided guidance through legislation and its interpretation by the courts.

The legislature has addressed Bauer's situation with enactments setting forth the elements of third degree assault and specifically defining criminal negligence, the state of mind alleged against Bauer.[9] The courts have acted to define the word "cause" as used in the criminal context and, in doing so, have provided guidance for how the acts of third parties affect criminal liability. Using this guidance and without consideration of any view of what "should" happen here, we conclude that this case may be presented to a jury.

All of this is not to say that there is proximate cause in this case; rather, we decline to hold that no rational fact finder could find that Bauer negligently caused AK-B's injuries. The jury should be allowed to make that determination after hearing both parties' fully developed arguments.

D.    Bauer's Arguments Are Not Persuasive

1.    Affirmative Act

Bauer first argues that the third degree assault statute requires an affirmative act by the defendant. Bauer performed an affirmative act by allegedly leaving dangerous objects where an irresponsible person could easily access them. Division One of this court has found an affirmative act under factually comparable circumstances. In *Parrilla v. King County*, 138 Wn. App. 427, 431, 157 P.3d 879 (2007), a bus driver exited the bus with the engine running and a

---

[9] Criminal negligence is defined in RCW 9A.08.010(1)(d):

> A person is criminally negligent or acts with criminal negligence when he or she fails to be aware of a substantial risk that a wrongful act may occur and his or her failure to be aware of such substantial risk constitutes a gross deviation from the standard of care that a reasonable person would exercise in the same situation.

visibly erratic passenger on board.[10] The passenger then crashed the bus into several vehicles. *Parrilla*, 138 Wn. App. at 431. The court held that the bus driver affirmatively acted by exiting the bus with the engine running and the passenger still on board. *Parrilla*, 138 Wn. App. at 438-39. Similarly, Bauer affirmatively acted by allegedly leaving loaded guns in areas of his home where an unsupervised child could easily access them.[11] Moreover, Bauer's affirmative act argument is better characterized as a legal causation argument; he is not arguing that he did not leave the guns where they were accessible to TC, he is arguing that this act is too attenuated from AK-B's injury for him to be liable for her assault.

      2.     *Chester*[12] and "Cause"

Bauer argues that our State Supreme Court has provided a definition of cause that, applied here, requires dismissal. This argument is based on the *Chester* court's definition of

---

[10] Although *Parrilla* is a civil case, the proximate cause analysis is the same for both civil and criminal cases. *See McDonald*, 90 Wn. App at 612, 616.

[11] Bauer cites to *Schwartz v. Elerding*, 166 Wn. App. 608, 270 P.3d 630, *review denied*, 174 Wn.2d 1010, 281 P.3d 686 (2012), as authority that his alleged passive negligence is not sufficient to support his assault charge. In *Schwartz*, the plaintiff sued the parents of a 17-year-old for negligence after the minor beat the plaintiff with a rifle that his parents purchased for him and allowed him to keep in the family vehicle. 166 Wn. App. at 611-12. The court concluded that the parents did not violate their duty of care. *Schwartz*, 166 Wn. App. at 621. The court also refused to accept the generalizations that "any and all minors have a dangerous proclivity when it comes to guns" and that "a minor misusing a gun is foreseeable by almost everyone." *Schwartz*, 166 Wn. App. at 620. *Schwartz* is inapposite here. First, the minor in *Schwartz* was a 17-year-old with a hunting license and gun safety training who legally possessed the gun. 166 Wn. App. at 616. By contrast, the minor in this case is a 9-year-old without any safety training who did not legally possess the gun. Second, the minor in *Schwartz* did not fire the gun, as Bauer claims in his brief; he used it to beat the plaintiff. Here, TC actually caused the gun to discharge. Finally, while the *Schwartz* court refused to generalize that a minor misusing a gun is always foreseeable, this does not preclude a finding of foreseeability in all cases.

[12] *State v. Chester*, 133 Wn.2d 15, 940 P.2d 1374 (1997).

cause.[13] The first problem with this argument is that Bauer's actions here clearly come within the *Chester* court's definition of cause: "to be the cause of, to bring about, to induce or to compel." 133 Wn.2d at 22 (citing BLACK'S LAW DICTIONARY 221 (6th ed. 1990); WEBSTER'S THIRD NEW INTERNATIONAL DICTIONARY 356 (1986)). As stated above, Bauer's actions could reasonably be found to be a "cause of" the shooting. Secondly, the Supreme Court's discussion of the word "cause" was in a much different context. The *Chester* court said that for the State to prevail, it had to show that Chester was actively involved in causing the child to disrobe. 133 Wn.2d at 23. But the word "cause" in the charging statute was grouped with a series of active verbs showing that the legislature's intent was that the State must prove that the defendant was actively involved in making the sexually explicit conduct occur. RCW 9.68A.040(1)(b). There is no such context in the third degree assault statute at issue here showing that the word means anything other than cause in its usual sense. Additionally, it is not clear that the *Chester* court's definition requires a different standard than proximate cause. The court determined that the stepdaughter's decision to undress occurred independently of the defendant's acts. *Chester*, 133 Wn.2d at 22-23. In other words, his actions were not an actual cause of her undressing. While the court did not explicitly spell out a proximate cause analysis, it engaged in a similar inquiry.

Later case law shows that the *Chester* court did not change the definition of cause as it is construed by Washington courts. Since *Chester*, Washington courts have reviewed statutes

---

[13] In *Chester*, the defendant was charged with sexual exploitation of a minor after he left a video camera in his stepdaughter's bedroom, without her knowledge, to catch her dressing after her shower. 133 Wn.2d at 17. RCW 9.68A.040(1) states, in part, "A person is guilty of sexual exploitation of a minor if the person . . . [a]ids, invites, employs, authorizes, or causes a minor to engage in sexually explicit conduct." The court held that the defendant's conduct was not prohibited by the sexual exploitation statute because the statute required an affirmative act by the defendant that initiated or resulted in the child's sexually explicit conduct. *Chester*, 133 Wn.2d at 22, 24.

requiring proof that the defendant caused a certain result, and, rather than using the definition in *Chester*, courts have construed cause to require a showing of proximate cause. *See Berube*, 150 Wn.2d at 510; *Christman*, 160 Wn. App. at 750-54; *McDonald*, 90 Wn. App. at 612-16.

### 3. Supervening Acts

Bauer next argues that, even if the State's definition of cause is correct, his alleged actions were not the proximate cause of the assault because TC's actions were supervening. Because the presence of a supervening act is a question for the jury, this argument is not persuasive.

An independent, intervening act by a third person that results in injury to the plaintiff may break the chain of causation. *Qualls v. Golden Arrow Farms*, 47 Wn.2d 599, 602, 288 P.2d 1090 (1955). An act is supervening, and thus terminates the defendant's liability, only if it is not reasonably foreseeable. *Crowe v. Gaston*, 134 Wn.2d 509, 519, 951 P.2d 1118 (1998). "An intervening act is not foreseeable if it is 'so highly extraordinary or improbable as to be wholly beyond the range of expectability.'" *Crowe*, 134 Wn.2d at 519-20 (quoting *Christen v. Lee*, 113 Wn.2d 479, 492, 780 P.2d 1307 (1989)). The foreseeability of an intervening act is a question of fact for the jury. *Crowe*, 134 Wn.2d at 520.

In *Parrilla*, the court held that there were sufficient facts to support a finding that the damage caused by the erratic passenger was foreseeable. 138 Wn. App. at 440. The driver left a bus, which was capable of causing severe harm, idling and unguarded within easy reach of an obviously irresponsible person. *Parrilla*, 138 Wn. App. at 441.

Here, a jury must decide whether TC's intervening acts—stealing the gun and treating it carelessly around others—were foreseeable. Bauer allegedly knew that he had left loaded guns where TC could access them, that TC was young and lacked firearm safety experience, and that

13

TC had stolen money from his vehicle. Whether he could have foreseen that TC would steal and carry around his gun is a question on which reasonable minds could differ. A jury should be allowed to make that determination after hearing both parties' fully developed arguments.

### E. Liability for Another's Conduct

Bauer further argues that a person can only be held criminally liable for the acts of another under RCW 9A.08.020, the complicity statute. To support this argument, Bauer cites to two cases: *In re Forfeiture of One 1970 Chevrolet Chevelle*, 166 Wn.2d 834, 215 P.3d 166 (2009), and *State v. Bobenhouse*, 166 Wn.2d 881, 214 P.3d 907 (2009). Both cases state that a person may be criminally liable for the acts of another under RCW 9A.08.020, but neither case states that this is the only situation where such liability is possible. *Chevrolet Chevelle*, 166 Wn.2d at 842-43; *Bobenhouse*, 166 Wn.2d at 889. These cases do not prevent the application of the usual proximate cause rules we described above.

Furthermore, the complicity statute does not preclude Bauer's liability in this situation. Under the statute, a person is guilty of a crime if it is committed by the conduct of another for whom he is legally accountable. RCW 9A.08.020(1). A person is legally accountable for the conduct of another when he causes an innocent or irresponsible person to engage in such conduct or when he is an accomplice in the commission of the crime. RCW 9A.08.020(2)(a), (c). Here, the State has not produced evidence to support accomplice liability, which requires the defendant's knowledge that his actions will promote a crime, but it has produced evidence that would support a jury's determination that Bauer caused TC's conduct. While it is not clear that the State will seek to instruct the jury under this section in this case, the facts of the case at this stage do not preclude it from doing so.

Bauer also argues that it would be unfair to hold him responsible for TC's acts. As we discussed above, it should be up to the jury to determine whether Bauer is in fact responsible. As far as Bauer is arguing that he had no notice his actions were criminal, we discuss that argument below in his vagueness challenge. In sum, the trial court correctly denied Bauer's *Knapstad* challenge.

## II. VAGUENESS CHALLENGE

Bauer argues that the third degree assault statute is vague as applied to him. Because all the elements of the statute are defined in statutes or case law, his argument fails.

We review the constitutionality of a statute de novo. *In re Det. of Keeney*, 141 Wn. App. 318, 323, 169 P.3d 852 (2007). We presume that statutes are constitutional, and one who challenges a statute as unconstitutionally vague must prove vagueness beyond a reasonable doubt. *State v. Watson*, 160 Wn.2d 1, 11, 154 P.3d 909 (2007). For statutes not involving First Amendment rights, we evaluate the vagueness challenge by examining the statute as applied under the particular facts of the case. *Watson*, 160 Wn.2d at 6 (quoting *State v. Coria*, 120 Wn.2d 156, 163, 839 P.2d 890 (1992). A statute is void for vagueness if either (1) it does not define the criminal offense with sufficient definiteness that ordinary people can understand what conduct is proscribed or (2) it does not provide ascertainable standards of guilt to protect against arbitrary enforcement. *Watson*, 160 Wn.2d at 6 (quoting *State v. Williams*, 144 Wn.2d 197, 203, 26 P.3d 890 (2001)).

The requirement that a statute provide sufficient definiteness "protects individuals from being held criminally accountable for conduct which a person of ordinary intelligence could not reasonably understand to be prohibited." *City of Spokane v. Douglass*, 115 Wn.2d 171, 178, 795 P.2d 693 (1990). A statute is unconstitutional when it "forbids conduct in terms so vague that

persons of common intelligence must guess at its meaning and differ as to its interpretation." *Burien Bark Supply v. King County*, 106 Wn.2d 868, 871, 725 P.2d 994 (1986). This does not require impossible standards of specificity or absolute agreement. *Douglass*, 115 Wn.2d at 179. "[A] statute is not unconstitutionally vague merely because a person cannot predict with complete certainty the exact point at which his actions would be classified as prohibited conduct." *City of Seattle v. Eze*, 111 Wn.2d 22, 27, 759 P.2d 366 (1988). Undefined terms do not automatically make the statute unconstitutionally vague; citizens may look to statutes and court rulings—which are "presumptively available to [the public]"—for clarification. *Douglass*, 115 Wn.2d at 180 (quoting *Smith*, 111 Wn.2d at 7). A statute that employs words with a well-settled common law meaning generally will be sustained against a charge of vagueness. *State v. Reader's Digest Ass'n*, 81 Wn.2d 259, 274, 501 P.2d 290 (1972).

The requirement that a statute provide ascertainable standards of guilt protects against arbitrary, erratic, and discriminatory enforcement. *Douglass*, 115 Wn.2d at 180. In determining whether a statute protects against arbitrary enforcement, we decide whether the statute proscribes conduct by resort to "'inherently subjective terms.'" *Douglass*, 115 Wn.2d at 181 (quoting *State v. Maciolek*, 101 Wn.2d 259, 267, 676 P.2d 996 (1984)). We must ask whether the terms are "'inherently subjective in the context in which they are used.'" *Douglass*, 115 Wn.2d at 181 quoting *State v. Worrell*, 111 Wn.2d 537, 544, 761 P.2d 56 (1988)). A statute is unconstitutional only if it invites an inordinate amount of police discretion. *Douglass*, 115 Wn.2d at 181.

The third degree assault statute is not unconstitutionally vague. It defines the offense with sufficient definiteness and provides ascertainable standards of guilt. Bauer was charged under RCW 9A.36.031(1)(d), which requires the State to prove that he acted with criminal

16

negligence and caused bodily harm to another person by means of a weapon. All of the elements are defined by statute or case law. "Criminal negligence" is defined in RCW 9A.08.010(1)(d):

> A person is criminally negligent or acts with criminal negligence when he or she fails to be aware of a substantial risk that a wrongful act may occur and his or her failure to be aware of such substantial risk constitutes a gross deviation from the standard of care that a reasonable person would exercise in the same situation.

"Bodily harm" is defined in RCW 9A.04.110(4)(a) as "physical pain or injury, illness, or an impairment of physical condition." As we discussed above, "cause" means proximate cause. Although this definition is not statutory, it is a well-settled common law definition that is presumptively available to the public through case law. *See, e.g., Berube*, 150 Wn.2d at 510 (the homicide by abuse statute requires proof that defendant caused the death of the victim, and proximate cause is an element of homicide by abuse). The terms of the statute are sufficiently defined such that a reasonably intelligent person would understand what conduct is prohibited, and the statute does not invite an inordinate amount of discretion.

Finally, Bauer argues that, should we deny his vagueness challenge, this judicial expansion of the third degree assault statute is unconstitutional because it retroactively applies a novel interpretation of the statute. Bauer's argument is based on *Bouie v. City of Columbia*, 378 U.S. 347, 84 S. Ct. 1697, 12 L. Ed. 2d 894 (1964). In *Bouie*, the Supreme Court held that the South Carolina Supreme Court's retroactive application of a novel construction of a trespass statute violated due process. 378 U.S. at 350. The defendants were convicted of trespassing after they refused to leave a lunch counter when asked by the store manager. *Bouie*, 378 U.S. at 348. South Carolina's criminal trespass statute stated that "entry upon the lands of another . . . after notice from the owner or tenant prohibiting such entry, shall be a misdemeanor." *Bouie*, 378 U.S. at 349 n.1 (citation omitted). The Supreme Court agreed with the defendants that South

43511-0-II

Carolina did not give them a fair warning that their conduct was criminal under the statute. *Bouie*, 378 U.S. at 355. The Court noted that "[t]here can be no doubt that a deprivation of the right of fair warning can result not only from vague statutory language but also from an unforeseeable and retroactive judicial expansion of narrow and precise statutory language." *Bouie*, 378 U.S. at 352. There was nothing in the statute to indicate that it also prohibited remaining on the land of another after being asked to leave. *Bouie*, 378 U.S. at 355. There was no support in prior South Carolina decisions for extending the reach of the statute to include remaining on another's property; in fact, there were decisions requiring proof of notice prohibiting entry. *Bouie*, 378 U.S. at 356. South Carolina's application of its new construction of the trespass statute to convict the defendants violated their due process rights. *Bouie*, 378 U.S. at 362.

*Bouie* is not applicable to these facts. At this point in the proceedings, there has been no change in the law. All we have done is apply the well-settled definition of cause. As part of the causation analysis, the jury must be allowed to consider whether TC's acts terminated Bauer's liability. This is not a new construction of the law; it is an application of existing law regarding causation.

III.    CONCLUSION

We have concluded that this case may be tried. We are told that this decision will open the floodgates to charges against innocent parents for the unanticipated criminal acts of their children where the parents' only fault was in failing to totally secure an item that could potentially be dangerous. We do not anticipate such a flood. But if a parent leaves a live hand grenade on the kitchen counter, they could be at risk of criminal prosecution. The reason why a hand grenade could lead to charges and a butcher knife will not is in the state of mind that must

18

be proven—that the parents' actions were at least a gross deviation from a normally careful person's conduct. Faced with this high burden, we do not anticipate that prosecutors will be filing charges for failing to secure normal household items such as knives, power tools, and the like.

We have carefully interpreted the statute that Bauer is charged under, giving the words their ordinary meaning and applying accepted Washington case law. The State has alleged sufficient evidence under the statute as we have construed it to take the matter to trial.

Affirmed.

_____
Penoyar, J.

I concur:

_____
Johanson, A.C.J.

BRIDGEWATER, J.P.T.[14] (dissenting) — The majority upholds the trial court's denial of Bauer's *Knapstad* motion to dismiss the charge against him. I do not downplay the hazard to others by keeping loaded firearms around children or the damage done to the injured victim, another child. But even in the face of tragedy, this is a case involving potential criminal liability and imprisonment. As such, we are bound to strictly construe the law, not to stretch it to fit the exigencies of the situation. Because the majority impermissibly extends the law of criminal negligence and criminal liability for the acts of another, I respectfully dissent.

The undisputed facts, based upon the police reports, center upon a theft of a loaded firearm from Bauer's residence. T.C., a nine-year-old child of Bauer's female friend, committed theft of a firearm, a class B felony[15], during a weekend visit with his mother where he slept in a room where loaded firearms were kept. T.C. and his sisters had been told never to touch any of the firearms because they were all loaded. T.C. stole the gun and took it to school some days later where, some 20 miles from the Bauer residence, the gun accidentally discharged, injuring one of T.C.'s classmates.

The State charged Bauer with third degree assault under RCW 9A.36.031(1)(d). The State conceded at oral argument that the legislature's statute regarding liability for

---

[14] Judge C. C. Bridgewater is serving as a judge pro tempore of the Court of Appeals, Division II, pursuant to CAR 21(c).

[15] RCW 9A.56.300(6).

the acts of another, RCW 9A.08.020[16], was not applicable to this charge, arguing that culpability for criminal negligence under the third degree assault statute is an additional method by which criminal liability for the acts of another could be imposed. The majority accepts this argument. I disagree.

## I. STATUTORY INTERPRETATION

We review questions of statutory interpretation de novo. *State v. Jacobs*, 154 Wn.2d 596, 600, 115 P.3d 281 (2005). When interpreting a statute, we seek to ascertain the legislature's intent. *Jacobs*, 154 Wn.2d at 600. Where a statute's meaning is plain on its face, we must give effect to that meaning as expressing the legislature's intent. *Jacobs*, 154 Wn.2d at 600. We determine the statute's plain meaning from the ordinary meaning of its language, as well as from the statute's general context, related provisions, and the statutory scheme as a whole. *Jacobs*, 154 Wn.2d at 600.

Furthermore, we must strictly construe statutes involving a deprivation of liberty. *In re Det. of Hawkins*, 169 Wn.2d 796, 801, 238 P.3d 1175 (2010). "Strict construction requires that,

---

[16] RCW 9A.08.020 provides:
> (1) A person is guilty of a crime if it is committed by the conduct of another person for which he or she is legally accountable.
> (2) A person is legally accountable for the conduct of another person when:
> (a) Acting with the kind of culpability that is sufficient for the commission of the crime, he or she causes an innocent or irresponsible person to engage in such conduct; or
> (b) He or she is made accountable for the conduct of such other person by this title or by the law defining the crime; or
> (c) He or she is an accomplice of such other person in the commission of the crime.

The State charged Bauer under RCW 9A.08.020(2)(a) for unlawful possession of a firearm by a minor under the theory that he caused an innocent agent or irresponsible person, T.C., to possess a firearm. The trial court dismissed this count under a *Knapstad* motion; because T.C. pleaded guilty to reckless endangerment in juvenile court, he was neither an innocent agent nor an irresponsible person. The State did not appeal the dismissal of Bauer's unlawful possession charge.

'given a choice between a narrow, restrictive construction and a broad, more liberal interpretation, we must choose the first option.'" *Hawkins*, 169 Wn.2d at 801 (quoting *Pac. Nw. Annual Conference of United Methodist Church v. Walla Walla County*, 82 Wn.2d 138, 141, 508 P.2d 1361 (1973)).

Finally, "[w]e interpret statutes in pari materia, considering all statutes on the same subject, taking into account all that the legislature has said on the subject, and attempting to create a unified whole." *Diaz v. State*, 175 Wn.2d 457, 466, 285 P.3d 873 (2012). Under the in pari materia rule, "when a specific statute punishes the same conduct punished under a general statute, they are concurrent statutes and the State must charge only under the specific statute." *State v. Presba*, 131 Wn. App. 47, 52, 126 P.3d 1280 (2005).

Here, the State charged Bauer for a third degree assault committed by T.C. RCW 9A.36.031(1)(d) generally imposes liability for third degree assault, but the legislature specifically imposed liability for acts of another under RCW 9A.08.020. Thus, if the State was to have charged Bauer for the assault committed by T.C., it should have charged him under RCW 9A.08.020.

But I would further hold that even RCW 9A.08.020 does not impose liability for T.C.'s acts under the facts of this case. RCW 9A.08.020(2)(a) generally provides that a person is criminally liable when he "causes" an innocent agent or irresponsible person to commit a crime. As our Supreme Court has observed, "causes" is an active verb requiring an affirmative act. *State v. Chester*, 133 Wn.2d 15, 22, 940 P.2d 1374 (1997).[17] This is consistent with RCW

---

[17] The majority distinguishes the *Chester* court's construction of the statutory term "causes" on the basis that, in the statute at issue in that case, "causes" was included among a list of other active verbs. Majority at 11. But an active verb is an active verb.

22

9A.08.020's definition of accomplice liability, which consists entirely of active verbs.[18] Finally, this is consistent with statutes in which the legislature has included liability for the acts of another within the crime's definition. For example, our Supreme Court has held that Washington's stalking statute, through its usage of a definition of "harassment" that included the phrase "course of conduct," encompassed liability for "*directing* a third party to harass the victim." *State v. Becklin*, 163 Wn.2d 519, 526-29, 182 P.3d 944 (2008) (emphasis added). Likewise, Washington's riot statute[19] requires active participation in a riot for liability for the acts of another to attach. *State v. Montejano*, 147 Wn. App. 696, 700-01, 703, 196 P.3d 1083 (2008). Thus, it is clear, whether through RCW 9A.08.020 or crimes defined as including such liability for the acts of another, our legislature knows how to impose such liability and has chosen to require some form of affirmative action of causing or participating in the other person's crime.

Despite these manifestations of legislative intent, the majority interprets the law as imposing criminal liability on Bauer under a theory that he negligently failed to act to secure his loaded firearms. Under the majority's interpretation, though, the following scenarios could have potentially subjected a person to being charged with third degree assault: (1) a child stealing a

---

[18] RCW 9A.08.020 provides:
>  (3) A person is an accomplice of another person in the commission of a crime if:
>  (a) With knowledge that it will promote or facilitate the commission of the crime, he or she:
>  (i) Solicits, commands, encourages, or requests such other person to commit it; or
>  (ii) Aids or agrees to aid such other person in planning or committing it; or

[19] RCW 9A.84.010(1) provides:
>  A person is guilty of the crime of riot if, acting with three or more other persons, he or she knowingly and unlawfully uses or threatens to use force, or in any way participates in the use of such force, against any other person or against property.

23

butcher knife from a cutting block in the kitchen, taking it to school, and accidentally cutting a classmate and (2) the person allowing a party for teenagers at his house, the teenagers covertly drinking liquor from the person's supply, and one of the teenagers subsequently assaulting someone while intoxicated. But such a theory of liability—whether in the hypotheticals or as charged in this case—does not fit within the extensive framework or examples provided by the legislature, and neither the State nor the majority provide a single case in which Washington courts have found a defendant criminally liable for another's acts based on the defendant's failure to act. The majority's interpretation impermissibly extends this state's law of criminal negligence and criminal liability for the acts of another.

I further observe that RCW 9A.08.020(2)(b) provides that a person is criminally liable for the acts of another when "[h]e or she is made accountable for the conduct of such other person . . . by the law defining the crime." Thus, it might be argued that the third degree assault statute falls within RCW 9A.08.020(2)(b) because the assault statute makes Bauer liable for T.C.'s acts under a theory of criminal negligence and proximate cause.

But such an interpretation of the third degree assault statute would be incorrect. As I discuss above, the legislature plainly knows how to make a person liable for the acts of another in statutes defining crimes, such as the rioting and stalking statutes. Liability for the acts of another is not express in the third degree assault statute.

Furthermore, concluding that the third degree assault statute implicitly encompasses such liability, as urged by the State and the majority, would violate the statutory interpretation canons of noscitur a sociis and ejusdem generis. Under the canon of noscitur a sociis, we must interpret statutory terms in light of other terms with which they are associated. *State v. Budik*, 173 Wn.2d 727, 735-36, 272 P.3d 816 (2012) (under noscitur a sociis, affirmative act requirement of five

24

statutory provisions defining crime of rendering criminal assistance created an inference that remaining provisions also required an affirmative act). Under the canon of ejusdem generis, where there is a "specific, specific, general" pattern, general provisions must conform to the specific examples. *See Bowie v. Wash. Dep't of Rev.*, 171 Wn.2d 1, 12, 248 P.3d 504 (2011). Here, the legislature has given us a list of criteria for imposing criminal liability on someone for the acts of another and the majority's criminal negligence and proximate cause theory simply does not fit within the extensive framework or examples enumerated by the legislature in RCW 9A.08.020. Those acts which impose liability for the acts of others are affirmative acts causing an innocent or irresponsible person to commit the crime or affirmatively acting as an accomplice to the crime itself. *See* RCW 9A.08.020(2)(a), (c). Applying the majority's theory of criminal negligence—which requires no affirmative act—under RCW 9A.08.020(2)(b)'s general provisions would contradict the specific provisions of RCW 9A.08.020(2)(a) and (c) and, thus, violate noscitur a sociis and ejusdem generis. Accordingly, interpreting RCW 9A.08.020(2)(b) and the third degree assault statute to impose liability for the acts of another in this case would be improper.

Thus, I would strictly construe RCW 9A.08.020 to require an affirmative act causing the crime before imposing liability for the acts of another. And, as I discuss above, the third degree assault charge against Bauer is based not on an affirmative act but a *negligent failure to act* by failing to secure his loaded firearms. Accordingly, because RCW 9A.08.020[20] does not

---

[20] Even if in pari materia is inapplicable here and the third degree assault statute potentially encompasses liability for the acts of another, it also uses the action verb "causes." RCW 9A.36.031(1)(d). Thus, the statute still required an affirmative act by Bauer before such liability could attach.

25

encompass such a theory of liability, I would hold that the trial court erred in denying Bauer's *Knapstad* motion to dismiss the third degree assault charge.

## II. MENTAL STATE AND LEGAL CAUSATION

In the alternative, I also address the majority's view that the third degree assault statute imposes criminal liability for the acts of another based on a theory of criminal negligence and proximate cause. Even under the majority's view, I would hold that the State's alleged facts fail to demonstrate the mental state statutorily required to commit this crime or the legal causation necessary under the majority's view.

First, a person commits third degree assault when he, "[w]*ith criminal negligence*, causes bodily harm to another person by means of a weapon or other instrument or thing likely to produce bodily harm." RCW 9A.36.031(1)(d) (emphasis added). RCW 9A.08.010(1)(d), which defines criminal negligence, provides:

> A person is criminally negligent or acts with criminal negligence when he or she fails to be aware of a substantial risk that a wrongful act may occur and his or her failure to be aware of such substantial risk constitutes a gross deviation from the standard of care that a reasonable person would exercise in the same situation.

Thus, under RCW 9A.36.031(1)(d), the State must prove that Bauer was oblivious to a "substantial risk" that a wrongful act might occur when the risk would have been blindingly obvious to a reasonable person.

Nothing in these facts demonstrates the required mental state. T.C. had not expressed any fascination with firearms; any fear, such that he felt he needed a firearm; or any proclivity to steal firearms before, without warning, stealing one of Bauer's firearms. In short, Bauer had expressly warned T.C. not to touch the firearms, and T.C. exhibited no previous signs of disobeying this warning. All the State demonstrates under these facts is the general notion that a

child—or anyone—might commit an unexpected criminal act. But such an amorphous fear is insufficient to demonstrate a *substantial risk* of a wrongful act that would have been obvious to a reasonable person.

Furthermore, the majority concludes that we need not address the issue of legal causation—that is, "a determination of whether liability *should* attach as a matter of law" and a necessary component of proximate cause—because the legislature and Washington courts have provided "guidance" in this case. *Hartley v. State*, 103 Wn.2d 768, 779, 698 P.2d 77 (1985); Majority at 9. Although Washington courts have held that the term "causes" in some criminal statutes encompasses the concept of proximate cause, the majority admits that whether a person may be criminally liable for the acts of another under the third degree assault statute is an issue of first impression in this state. Majority at 9. Moreover, neither the State nor the majority cites to a single case in which the statutory term "causes" has been employed to extend criminal liability for the acts of another. Finally, legal causation is a question of law for the courts, not the jury. *Tae Kim v. Budget Rent A Car Sys., Inc.*, 143 Wn.2d 190, 204, 15 P.3d 1283 (2001). Because legal causation is a question of law "dependent on 'mixed considerations of logic, common sense, justice, policy, and precedent'" properly resolved only by this court, we must address it. *See Hartley*, 103 Wn.2d at 779 (quoting *King v. Seattle*, 84 Wn.2d 239, 250, 525 P.2d 228 (1974)).

I begin from the position that Washington law does not criminalize keeping a loaded firearm in one's home. Furthermore, the United States Supreme Court has held that the Second Amendment protects, at minimum, an individual's "right to keep and bear arms . . . for self-defense within the home." *McDonald v. City of Chicago*, ___ U.S. ___, 130 S. Ct. 3020, 3044, 177 L. Ed. 2d 894 (2010). Thus, as a matter of policy, the majority's approach would extend

27

criminal liability to Bauer's otherwise lawful and constitutionally protected act of keeping loaded firearms within his home.

Moreover, the majority's approach runs contrary to Washington precedent on liability for the acts of another. In civil negligence cases, the concepts of duty and legal causation are "linked to policy considerations." *Hartley*, 103 Wn.2d at 779. Thus, whether a duty exists, like legal causation, is a question of law for this court. *Degel v. Majestic Mobile Manor, Inc.*, 129 Wn.2d 43, 48, 914 P.2d 728 (1996). Because duty and legal causation are "intertwined," discussion of whether a legal duty exists under the circumstances is helpful in addressing whether legal causation also exists. *See Hartley*, 103 Wn.2d at 779-80; *Donaldson v. City of Seattle*, 65 Wn. App. 661, 669 n.14, 831 P.2d 1098 (1992).

The general rule at common law is that a private person does not have a duty to protect others from the criminal acts of third parties. *Tae Kim*, 143 Wn.2d at 195. Division One of this court has considered whether Washington law imposes a specific duty to secure firearms within the home from theft and subsequent use in criminal acts. In *McGrane v. Cline*, 94 Wn. App. 925, 927, 973 P.2d 1092, *review denied*, 138 Wn.2d 1018 (1999), the Clines' 16-year-old daughter, without her parents' permission, invited young men over while her parents were away. Either the Clines' daughter gave away or one of the young men stole an unsecured firearm from the residence. *McGrane*, 94 Wn. App. at 927. The young man subsequently used the firearm to kill McGrane during a robbery; her estate sued the Clines for breach of an alleged duty to the general public to secure the firearm. *McGrane*, 94 Wn. App. at 927-28. In declining to impose such a duty, Division One reasoned:

> [T]here are too many issues of legitimate public debate concerning the private ownership and storage of firearms for this court to impose potential liability upon firearm owners based solely upon factors of ownership, theft, and subsequent

28

criminal use of a firearm. We believe that the proper arena to resolve issues of such competing societal interests is legislative rather than judicial.

*McGrane*, 94 Wn. App. at 929. Like Division One's approach in *McGrane*, I would leave it to the legislature to resolve the numerous competing rights, realities, interests, and issues of public debate by imposing criminal liability, if any, for T.C.'s theft and criminal use of Bauer's firearm.

Moreover, Division One has also addressed the question of whether "civil liability [should] be imposed upon those who plan and furnish beer for a high school graduation keg party where criminal violence erupts." *Cameron v. Murray*, 151 Wn. App. 646, 649, 214 P.3d 150, *review denied*, 168 Wn.2d 1018 (2009). In *Cameron*, a negligence suit ensued after an attendee at a high school senior keg party struck the victim in the head with a heavy glass beer mug, eventually resulting in the victim's death. *Cameron*, 151 Wn. App. at 649-50. On appeal, Division One rejected the generalization that "bad things happen when crowds of young people get very drunk together" as the sole basis of liability for negligence. *Cameron*, 151 Wn. App. at 654. Lacking any specific evidence that the parties who planned the keg party and furnished liquor for it were aware that the assailant had a propensity for violence, Division One refused to impose civil liability on those parties for the assailant's criminal act. *Cameron*, 151 Wn. App. at 656.

Further, Division Three of this court has rejected the generalizations that "'all minors have a dangerous proclivity when it comes to guns'" and "'a minor misusing a gun is foreseeable by almost everyone'" as bases for finding civil negligence. *Schwartz v. Elerding*, 166 Wn. App. 608, 620, 270 P.3d 630, *review denied*, 174 Wn.2d 1010 (2012). In fact, Division Three undercut this generalization by observing the numerous instances in which Washington law

permits minors to possess firearms.[21] *Schwartz*, 166 Wn. App. at 620-21. Accordingly, without any specific evidence of a teenager's involvement in any previous altercations, Division Three refused as a matter of law to impose liability on the defendants under a negligence theory after the teenager used the butt of a gun the defendants had given him to assault someone. *Schwartz*, 166 Wn. App. at 611, 617, 620-21.

Finally, I elaborate on some of the specific circumstances in which Washington law permits minors to possess and use firearms. RCW 9.41.042(7) provides that a minor may possess firearms "[o]n real property under the control of his or her parent, other relative, or legal guardian and who has the permission of the parent or legal guardian to possess a firearm." Similarly, RCW 9.41.042(8) permits a minor's firearm possession "[a]t his or her residence and who, with the permission of his or her parent or legal guardian, possesses a firearm for the purpose of exercising the rights specified in RCW 9A.16.020(3)." RCW 9A.16.020(3)[22] generally permits the use of reasonable force in defending one's self or third parties from personal harm or harm to property in their possession. Thus, Washington law permits that, with the appropriate permissions, minors may not only possess but *use* firearms within the home for self defense, defense of others, and defense of property. Arguably, the law contemplates that, in

---

[21] RCW 9.41.042 provides the circumstances in which minors may possess firearms.

[22] RCW 9A.16.020(3) provides:
   The use, attempt, or offer to use force upon or toward the person of another is not unlawful in the following cases:

   . . . .

   Whenever used by a party about to be injured, or by another lawfully aiding him or her, in preventing or attempting to prevent an offense against his or her person, or a malicious trespass, or other malicious interference with real or personal property lawfully in his or her possession, in case the force is not more than is necessary.

order to be useful for self defense purposes, such firearms may need to be readily accessible and operable by a minor, that is, unsecured and loaded.[23] Thus, the majority's broad imposition of criminal liability for failure to secure a loaded gun kept within the home would conflict with the legislature's express authorization of minors to use firearms within the home for lawful defense purposes.

In sum, Washington law does not prohibit—and, to some extent, the Second Amendment affirmatively protects—keeping firearms at home. Washington courts have declined to impose a duty to the general public to secure firearms within the home from theft and subsequent criminal use, recognizing that such a heavy policy question is best addressed to the legislature. And Washington courts have held that, as a matter of law, bare generalizations such as "all minors have a dangerous proclivity when it comes to guns" are insufficient on their own to maintain a civil negligence claim.

Here, where the State's allegations consist of little more than such a broad generalization, I would hold that, as a matter of law and in accord with Washington precedent, the facts fail to establish legal causation in the civil context. Such precedent should apply with even greater force in criminal cases where, as here, defendants face a possible loss of their liberty and the social stigma associated with a criminal conviction. Moreover, consistent with Washington law and policy, I would decline to judicially impose a duty to secure firearms within one's home. The imposition of such a duty would require a careful balancing of safety and civil liberty issues

---

[23] Likewise, the same is true for adults who need to engage in defense of homes where children are present. For many Washingtonians who are otherwise responsible firearm owners, law enforcement may only be able to respond within minutes when seconds matter. Because this court is unable to hear from such citizens before subjecting them to potential criminal liability for keeping their firearms necessarily operable and accessible within the home, we are a poor substitute for the legislature in situations such as this case. *Cf. McGrane*, 94 Wn. App. at 929.

31

involving adults—such as the potential use of stolen firearms in crimes and the civil rights of adults to own and use firearms in defense of the home—as well as Washington laws demonstrating approval of *minors* possessing and using firearms within the home for lawful purposes, including self defense. Thus, the legislature is better suited to receive evidence far beyond this court's purview in addressing the many competing public interests surrounding this issue and to craft the contours of such a duty, if any. Accordingly, I would hold that the trial court erred in denying Bauer's *Knapstad* motion, and I would remand for dismissal of the charge against him.

Bridgewater, JPT