

FILE
IN CLERKS OFFICE
SUPREME COURT, STATE OF WASHINGTON
DATE JUL 1 7 2014

Madsen, C.J.
CHIEF JUSTICE

# IN THE SUPREME COURT OF THE STATE OF WASHINGTON

| | |
|---|---|
| STATE OF WASHINGTON, | NO. 88559-1 |
| Respondent, | |
| v. | EN BANC |
| DOUGLAS L. BAUER, | Filed JUL 1 7 2014 |
| Petitioner. | |

GORDON McCLOUD, J.—TC, a child, took a loaded gun from the home where his mother lived with her boyfriend, Douglas Bauer. The gun belonged to Bauer.[1] TC brought that loaded gun to school in his backpack a few days after he stole it. The gun discharged as TC was rummaging in his pack at the end of the day. The bullet struck TC's classmate, and it seriously injured her.

The State charged Bauer with assault in the third degree, alleging that he, "[w]ith criminal negligence, cause[d] bodily harm to another person by means of a weapon or other instrument or thing likely to produce bodily harm." RCW

---

[1] Bauer is not related to TC and is not TC's guardian. TC does not live with his mother and Bauer, but visits.

9A.36.031(1)(d). Bauer moved to dismiss pretrial under *State v. Knapstad*,[2] arguing that the facts did not support a third degree assault charge as a matter of law. The State argued that the statutory phrase "causes bodily harm" reached Bauer's conduct as a primary "cause" of the harm to TC's classmate. The trial court agreed with the State and denied the motion to dismiss but then certified the matter to the Court of Appeals. In a split decision, the Court of Appeals upheld the trial court's ruling. *State v. Bauer*, 174 Wn. App. 59, 295 P.3d 1227 (2013). We now reverse the Court of Appeals.

## FACTS

On February 22, 2012, at about 1:30 p.m., the children at Armin Jahr Elementary School in Bremerton, Washington, were getting ready to go home for the day. As the teacher prepared to lead the children from the classroom to the school bus, she heard a loud pop. Looking around, the teacher saw one child bent over with blood on her hands. She summoned other staff, and before long they realized that the bloodied child had been shot.

A staff member noticed a backpack on TC's desk. It contained a gun. The backpack was identified as TC's backpack, and after the police arrived, TC was transported to a Youth Services Center for booking. Police later concluded that the

---

[2] 107 Wn.2d 346, 356, 729 P.2d 48 (1986).

gun, a Heckler & Koch .45 caliber pistol, had discharged "while still inside the backpack." Clerk's Papers (CP) at 86.

Police interviewed TC several times. TC explained that he had been visiting his mother and her boyfriend Bauer in their home for the past three years, since he was six years old. He asserted that ever since he first visited, he had seen multiple guns accessible throughout the house. TC said that his mother and Bauer told him the guns were all loaded. According to TC, the weekend before the shooting, as he was leaving Bauer's house, he saw a gun on a bedroom dresser and "swiped the gun into his backpack." CP at 116.[3] TC explained that he took the gun because some classmates had "told him they were going to have teenagers come and beat him up." *Id.* He asserted that the shooting was accidental. TC pleaded guilty in juvenile court to reckless endangerment and was sentenced to probation and counseling.

Police also interviewed TC's mother and Bauer, along with TC's siblings. Their statements corroborate TC's statements that there were multiple unsecured and loaded guns around the house.

---

[3] Bauer's *Knapstad* motion to dismiss was based on the factual summary provided in defense counsel's affidavit attached to the motion. That factual summary was based on "a review of the police reports, discovery and other material received thus far from the Kitsap County Prosecutor's Office." CP at 49. The State does not dispute the version of the facts set forth in the *Knapstad* motion.

The State charged Bauer with assault in the third degree under the deadly weapon prong. That portion of the assault statute states that a person is guilty of third degree assault who, "[w]ith criminal negligence, causes bodily harm to another person by means of a weapon or other instrument or thing likely to produce bodily harm." RCW 9A.36.031(1)(d). The State also charged Bauer with TC's unlawful possession of a firearm, relying on the complicity statute, which states in relevant part that a person is liable for the criminal conduct of another if, "[a]cting with the kind of culpability that is sufficient for the commission of the crime, he or she causes an innocent or irresponsible person to engage in such conduct." RCW 9A.08.020(2)(a). Bauer moved to dismiss both charges under *Knapstad*.[4] He also moved to dismiss the charges on vagueness grounds.

The trial court granted the motion to dismiss the unlawful possession of a firearm charge, and the State did not appeal that decision. CP at 139. The trial court also denied the motions to dismiss the third degree assault charge. *Id.* However, the trial judge recognized that this ruling "involves a controlling question of law as to which there is substantial ground for a difference of opinion" and certified the questions to the Court of Appeals. CP at 142.

---

[4] A defendant is entitled to dismissal of charges pretrial if "there are no material disputed facts and the undisputed facts do not establish a prima facie case of guilt." *Knapstad*, 107 Wn.2d at 356.

4

The Court of Appeals affirmed in a split decision. *Bauer*, 174 Wn. App. 59. Two judges concluded that the word "causes" in the third degree assault statute was sufficiently flexible to present a jury question on whether Bauer "caused" the injury to TC's classmate by leaving a loaded gun where TC could access it. *Id.* at 69-70. The two-member majority also held that the facts of the case did not preclude the State from seeking to convict Bauer under the complicity statute, RCW 9A.08.020. *Id.* at 77. The majority rejected Bauer's vagueness argument. *Id.* at 80-81.

Bauer sought discretionary review by this court, and we granted it. *State v. Bauer*, 177 Wn.2d 1019, 304 P.3d 115 (2013). We hold that the third degree assault statute does not apply to Bauer's conduct. We further hold that the complicity statute does not expand the assault statute's reach to Bauer's conduct. Because we resolve the case on those grounds, we do not reach Bauer's vagueness challenge.

## ANALYSIS

### A.  *KNAPSTAD* MOTION

#### i.    *Standard of Review*

Under *Knapstad*, a defendant may move to dismiss a criminal charge on the ground that there are no disputed material facts and the undisputed facts do not establish a prima facie case of guilt as a matter of law. *Knapstad*, 107 Wn.2d at

5

356-57. We review a trial court's decision on a *Knapstad* motion de novo. *See State v. Montano*, 169 Wn.2d 872, 876, 239 P.3d 360 (2010) (citing *State v. Conte*, 159 Wn.2d 797, 803, 154 P.3d 194 (2007)).

> ii.    *Causation in Criminal Law Is Different from Causation in Tort*

In this case, resolution of the *Knapstad* motion turns on statutory interpretation—primarily, the meaning of the word "causes" in the third degree assault statute. RCW 9A.36.031(1)(d). The legislature has provided the following rule for interpreting such criminal statutes: "[t]he provisions of the common law relating to the commission of crime and the punishment thereof, insofar as not inconsistent with the Constitution and statutes of this state, shall supplement all penal statutes of this state . . . ." RCW 9A.04.060. The assault statute does not define the term "cause." We therefore turn to "the common law relating to the commission of crime and the punishment thereof" to supplement that provision. *Id.*

Our court has ruled that "[b]efore criminal liability is imposed, the conduct of the defendant must be both (1) the actual cause, and (2) the 'legal' or 'proximate' cause of the result." *State v. Rivas*, 126 Wn.2d 443, 453, 896 P.2d 57

(1995) (quoting 1 WAYNE R. LAFAVE & AUSTIN W. SCOTT, JR., SUBSTANTIVE CRIMINAL LAW § 3.12, at 392 (1986)).[5]

"'Cause in fact refers to the "but for" consequences of an act—the physical connection between an act and an injury.'" *State v. Dennison*, 115 Wn.2d 609, 624, 801 P.2d 193 (1990) (quoting *Hartley v. State*, 103 Wn.2d 768, 778, 698 P.2d 77 (1985)). "Legal causation, on the other hand,"

> involves a determination of whether liability *should* attach as a matter of law given the existence of cause in fact. If the factual elements of the tort are proved, determination of legal liability will be dependent on "mixed considerations of logic, common sense, justice, policy, and precedent."

*Hartley*, 103 Wn.2d at 779 (quoting *King v. City of Seattle*, 84 Wn.2d 239, 250, 525 P.2d 228 (1974) (citing 1 THOMAS ATKINS STREET, FOUNDATIONS OF LEGAL LIABILITY 100, 110 (1906))).[6]

---

[5] Washington recognizes two elements of causation: cause in fact (sometimes called "actual" or "but for" cause); and legal cause (sometimes called "proximate" cause). *Hartley v. State*, 103 Wn.2d 768, 777-79, 698 P.2d 77 (1985) (citing *Harbeson v. Parke-Davis, Inc.*, 98 Wn.2d 460, 475, 656 P.2d 483 (1983)). In Washington, unlike other jurisdictions, we call both of these elements together "proximate cause." *Id.* at 777. Note, however, that in *Rivas*, we used the phrase "legal cause" to mean the same thing as "proximate cause." *Rivas*, 126 Wn.2d at 453. In context, we did not mean "cause in fact," but the other type of causation. To be clear, this opinion will refer to the two different types of causation as "legal cause" and "cause in fact" unless otherwise noted.

[6] Note that this case discusses legal causation in the civil, not criminal, context.

This court, in agreement with commentators and other jurisdictions, has observed that "as to cause in fact, tort and criminal situations are exactly alike." *Dennison*, 115 Wn.2d at 624 n.15 (citing LAFAVE & SCOTT, *supra*, at 397 n.31).

Legal causation, however, is different. Commentators and courts recognize that criminal law and tort law serve different purposes and therefore have different principles of legal causation. "[W]ith crimes, where the consequences of a determination of guilt are more drastic . . . it is arguable that a closer relationship between the result achieved and that intended or hazarded should be required." 1 WAYNE R. LAFAVE, SUBSTANTIVE CRIMINAL LAW § 6.4(c), at 472 (2d ed. 2003). "The wider doctrines of causation currently applied in tort law should not be extended to criminal law. . . . [I]n criminal law, . . . it is not normally enough merely to prove that [the] accused occasioned the harm; he must have 'caused' it in the strict sense." H.L.A. HART & TONY HONORÉ, CAUSATION IN THE LAW 350-51 (2d ed. 1985); *see also* JEROME HALL, GENERAL PRINCIPLES OF CRIMINAL LAW 254-55 (2d ed. 1960) (noting that causation in tort may be much broader than causation in criminal law).[7]

---

[7] Some scholars hold contrasting views. *See, e.g.,* HALL, *supra*, at 294-95 (describing Justice Holmes's view that identical policies underlie both tort and criminal law).

Most states that have addressed the question agree that legal causation is defined more narrowly in criminal law than it is in tort law. The Pennsylvania Supreme Court explained, in the context of felony murder:

> A closer causal connection between the felony and the killing than the proximate-cause[8] theory normally applicable to tort cases should be required because of the extreme penalty attaching to a conviction for felony murder and the difference between the underlying rationales of criminal and tort law. The former is intended to impose punishment in appropriate cases while the latter is primarily concerned with who shall bear the burden of a loss.

*Commonwealth ex rel. Smith v. Myers*, 438 Pa. 218, 232, 261 A.2d 550 (1970). Cases from multiple jurisdictions, both state and federal, support this principle. *E.g., United States v. Schmidt*, 626 F.2d 616, 618 n.3 (8th Cir. 1980) ("[W]e believe that proof of some more direct causal connection between act and result should be required in criminal cases than would be sufficient to uphold liability in tort."); *Campbell v. State*, 293 Md. 438, 450-51, 444 A.2d 1034 (1982) ("[T]he tort liability concept of proximate cause is generally too broad and comprehensive to be appropriate in a criminal proceeding . . . ."); *People v. Kibbe*, 35 N.Y.2d 407, 413, 321 N.E.2d 773, 362 N.Y.S.2d 848 (1974) ("We subscribe to the requirement that the defendants' actions must be a *sufficiently direct cause* of the ensuing death before there can be any imposition of criminal liability, and recognize, of course,

---

[8] Note that most jurisdictions use the term "proximate cause" to mean something similar to what we call "legal cause"; whereas in Washington, "proximate cause" means both "cause in fact" and "legal cause" together.

that this standard is greater than that required to serve as a basis for tort liability."); *People v. Scott*, 29 Mich. App. 549, 558, 185 N.W.2d 576 (1971) ("In criminal prosecutions there must be a more direct causal connection between the criminal conduct of the defendant and the homicide charged than is required by the tort liability concept of proximate cause.").

This court has never explicitly addressed whether "legal cause" is the same in both tort and criminal law. But a comparison of Washington criminal and tort cases shows that liability tends to extend further in tort cases. For example, in *Schooley v. Pinch's Deli Market, Inc.*, we held that, as a matter of policy, a vendor who sells alcohol to a minor may be the legal cause of injuries to a second minor who obtained the alcohol purchased by the first minor. 134 Wn.2d 468, 480, 951 P.2d 749 (1998). In *Bronk v. Davenny*, we held that liability could extend to a defendant who left a tractor operational and unguarded on his property, which was stolen by children who used it to cause damage to the plaintiff's property. 25 Wn.2d 443, 171 P.2d 237 (1946). And in *Parrilla v. King County*, a county bus driver left his bus with the engine running while there was a single passenger on board who was behaving in an obviously erratic manner. 138 Wn. App. 427, 430-31, 157 P.3d 879 (2007). The passenger then got in the driver's seat and crashed the bus, causing injuries. *Id.* at 431. The Court of Appeals concluded that under those circumstances the county was not shielded from liability. *Id.* at 441.

No appellate criminal case in Washington has found legal causation based on negligent acts similar to those in the civil cases above that were incapable of causing injury directly. This is apparent in the facts of the cases cited by the State in support of its argument that it may charge Bauer with third degree assault. For example, in *State v. Leech*, this court held that an arsonist "caused" the death of a fire fighter who responded to the arson fire, despite the fact that the fire fighter may have been negligent in his fire fighting. 114 Wn.2d 700, 705, 790 P.2d 160 (1990). The arsonist, however, intentionally started the fire—clearly an intentional criminal act capable of causing harm in and of itself. In *State v. Perez-Cervantes*, we held that a person who stabs another may be liable for the other's death even if drug abuse also contributed to the death. 141 Wn.2d 468, 6 P.3d 1160 (2000). In contrast to this case, that defendant performed an intentional criminal act—stabbing—which directly caused harm. And in *State v. Christman*, the Court of Appeals applied causation principles to determine that a person who gives illicit drugs to another may be liable for the other's death from overdose even if other drugs from another source also contributed to the death. 160 Wn. App. 741, 249 P.3d 680 (2011). Once again, the initial act was not only intentional, but felonious, and capable of causing harm in and of itself.

Bauer's act of gun ownership, in contrast, is not felonious or criminal. His decision to keep loaded weapons around the house is not, in itself, a crime in this

11

state, either. The most analogous criminal case that we have found is from Iowa: *State v. Ayers*, 478 N.W.2d 606 (Iowa 1991). In that case, Ayers was a firearm vendor convicted of involuntary manslaughter for selling a gun to a minor. *Id.* at 607. The minor accidentally shot and killed his girl friend a few days later. *Id.* The court held, "More is required than appears here to support a showing of proximate cause in a manslaughter case. The missing ingredient is a more direct connection between Ayers and the act which killed the young victim." *Id.* at 608.

Neither party has identified a Washington case upholding criminal liability on facts like the ones on which the *Bauer* prosecution is based. This court has found no Washington case upholding such liability, either, where the accused did not actively participate in the immediate physical impetus of harm. *Cf.* HART & HONORÉ, *supra*, at 326 ("[W]here [the first actor's] conduct was not sufficient [to bring about the harm] without the intervention of the second actor . . . most decisions relieve the first actor of responsibility.").

In light of the scholarly literature, our case law, and case law from foreign jurisdictions, we hold that "legal cause" in criminal cases differs from, and is narrower than, "legal cause" in tort cases in Washington.

### iii.    *Liability Does Not Attach to Bauer in This Case*

As discussed above, there is no criminal case in Washington upholding criminal liability based on a negligent act that has such intervening facts as in this

12

case between the original negligence and the final, specific, injurious result. More tellingly, even in analogous civil cases, we have declined to extend liability so far.

For example, in *Sailor v. Ohlde*, this court addressed whether "the owner of an automobile who leaves the key in the ignition switch [can be civilly] liable for injury or damage caused by a stranger who enters upon private property and steals the automobile." 71 Wn.2d 646, 647, 430 P.2d 591 (1967). We answered the question no. *Id.*

In *Pratt v. Thomas*, we reached the same conclusion regarding an accident involving a car stolen from a public parking lot. 80 Wn.2d 117, 118, 491 P.2d 1285 (1971). Characterizing the question as one of "proximate cause," we held:

> Here it is plain the accident which caused plaintiff's injuries was not a part of the natural and continuous sequence of events which flowed from respondents' act in leaving their station wagon in the parking lot. It was the result of new and independent forces. Among the new forces were the stealing of the vehicle, the pursuit by the state patrol, the attempt by the thieves to run from the officers and, finally, the accident.

*Id.* at 119. We acknowledge that this summary could be characterized as addressing cause in fact, legal cause, or both.[9] The court did not distinguish

---

[9] For example, the language "natural and continuous sequence of events which flowed from the act" is similar to language often associated with legal, rather than factual, causation. *E.g.*, 1 CHARLES E. TORCIA, WHARTON'S CRIMINAL LAW § 26, at 147-48 (15th ed. 1993). But the language regarding "new and independent forces" is, under Washington case law, a part of the factual inquiry. *See Lowman v. Wilbur*, 178 Wn.2d 165, 172, 309 P.3d 387 (2013).

between the two, and we had not yet decided *Hartley*, which clarified the two different kinds of causation. Still, this court found that "proximate cause" was lacking. *Id.*

Likewise, in *Kim v. Budget Rent A Car Systems, Inc.*, we held that causation was lacking where a car rental company left a car unlocked in its parking lot with keys in the ignition, the car was stolen, and the thief caused injuries in an accident the following day. 143 Wn.2d 190, 15 P.3d 1283 (2001). We stated that "[a]t a minimum, the remoteness in time between the criminal act and the injury is dispositive to the question of legal cause in this case." *Id.* at 205. We explained that "[e]ven if it were negligent for Budget to leave the keys inside of its minivan, 'the responsibility for such negligence must terminate at some time in the future. . . .'" *Id.* (quoting *Gmerek v. Rachlin*, 390 So. 2d 1230, 1231 (Fla. Dist. Ct. App. 1980)). We therefore concluded that legal cause was lacking because "Young went home, went to sleep, and became intoxicated before criminally causing the accident injuring plaintiff the day after the theft." *Id.* In addition, we noted that where other jurisdictions had found liability, "most have not involved the type of attenuated facts present here." *Id.*

Finally, the Washington tort case most closely analogous to the one at hand, *McGrane v. Cline*, also supports our holding that Bauer is not liable for third degree assault in this case. 94 Wn. App. 925, 973 P.2d 1092 (1999). In *McGrane*,

14

a teenage daughter took the parents' firearm from their home, gave it to a friend, the friend used it to commit a robbery, and he fatally shot a third person during that crime. *Id.* at 926-27. The Court of Appeals ruled that the parents were not civilly liable for that result. *Id.* at 928-29. Although that case was decided on grounds of duty, there is a well-recognized "interrelationship between questions of duty and legal cause." *Lowman v. Wilbur*, 178 Wn.2d 165, 169, 309 P.3d 387 (2013).

Just as in *McGrane*, the firearm here was taken, without the owner's permission or knowledge, by a minor child and later used to cause serious harm. Similar to *Kim*, two days passed between TC taking the gun from Bauer on Monday afternoon and the shooting at school on Wednesday afternoon. *McGrane*, *Kim*, and its companion cases *Sailor* and *Pratt* are civil cases, not criminal cases. No criminal case in Washington has found liability on such attenuated facts as those in this case. Because legal causation in civil cases is broader and more flexible than it is in criminal cases, these civil cases compel the conclusion that legal causation is not satisfied as to Bauer in this case.

B.    CRIMINAL LIABILITY FOR ACTS OF A THIRD PARTY

Bauer asserts that where injury is caused by a third party, the State may charge a person other than that third party with a crime only under the complicity statute and that the complicity statute does not reach Bauer's conduct. *See* RCW 9A.08.020 ("Liability for conduct of another—Complicity" (boldface omitted)).

The State responds that it is not charging Bauer for another's conduct, it is charging him with his own conduct—leaving loaded guns around with children present. The Court of Appeals found that the State could rely on both principal and complicity liability. *Bauer*, 174 Wn. App. at 76-77.

We need not decide whether the State can *ever* charge a person, as a principal, for harm that is the immediate result of a third party's actions. As discussed *supra* Part A.iii, immediately above, the State cannot do so on the facts of this case.

As to the second point—whether complicity liability is available in this case—the Court of Appeals is mistaken. Under the undisputed facts of this case, the State cannot rely on the complicity statute.[10]

The complicity statute establishes vicarious criminal liability in three situations: accomplice liability (RCW 9A.08.020(2)(c)); when a criminal statute itself expressly provides for vicarious liability (RCW 9A.08.020(2)(b)); and by "caus[ing]" an innocent person to do the illegal act (RCW 9A.08.020(2)(a)). The Court of Appeals first noted, correctly, that the State could not rely on accomplice liability under the subsection (2)(c) prong. For accomplice liability to attach, the

---

[10] The State has represented to this court in its supplemental briefing that "the State is not arguing that Bauer should be held responsible for the actions of another pursuant to RCW 9A.08.0[2]0." Suppl. Br. of Resp't at 19. But it does not need to charge accomplice liability to seek an accomplice liability instruction, and the Court of Appeals addressed the availability of such an instruction. *Bauer*, 174 Wn. App. at 77.

16

defendant must have knowledge that his actions will "'promote or facilitate'" the commission of "'*the*'" particular crime at issue. *State v. Stein*, 144 Wn.2d 236, 245, 27 P.3d 184 (2001) (quoting RCW 9A.08.020(3)(a)). Because there is no evidence of such knowledge in this case, the Court of Appeals held, the State could not seek to convict Bauer as an accomplice. We agree.

The Court of Appeals did not separately discuss vicarious liability under prong (2)(b). That was appropriate. Prong (2)(b) seems to refer the reader back to the language of the statute defining the substantive crime, which, in this case, we have already analyzed, above.

The Court of Appeals concluded, however, that the State could seek to convict Bauer under the "innocent or irresponsible person" prong of the complicity statute, that is, RCW 9A.08.020(2)(a). *Bauer*, 174 Wn. App. at 77. Under that prong, a person is guilty of a crime if it is committed by the conduct of another when, "[a]cting with the kind of culpability that is sufficient for the commission of *the crime*, he or she causes an innocent or irresponsible person to engage in such conduct." RCW 9A.08.020(2)(a) (emphasis added). Prong (2)(a) does not require intent, only "culpability that is sufficient for the commission of the crime." *Id.* Since a third degree assault charge requires only a culpability of criminal

negligence,[11] the Court of Appeals reasoned that Bauer could be liable for TC's conduct if he caused that conduct:

> Here, the State . . . has produced evidence that would support a jury's determination that Bauer caused TC's conduct. While it is not clear that the State will seek to instruct the jury under this section in this case, the facts of the case at this stage do not preclude it from doing so.

*Bauer*, 174 Wn. App. at 77. It is not completely clear to what evidence of causation the Court of Appeals is referring to, but it appears to mean the evidence that Bauer left guns lying around.[12]

The Court of Appeals's reasoning fails to take account of two things. First, RCW 9A.08.020(2)(a) requires proof that the defendant acted with the same mens rea as that required for "the crime." We have previously interpreted the words "the crime" in other subsections of the complicity statute very narrowly. We have said that "the crime" means intent to promote the crime that was actually charged, not

---

[11] The trial court dismissed the State's charge of unlawful possession of a firearm, the State did not appeal that decision, and it is therefore not before us. We note, however, that "knowing possession" is an essential element of the crime of unlawful possession of a firearm. *State v. Anderson*, 141 Wn.2d 357, 366, 5 P.3d 1247 (2000). Thus it seems likely that even if the charge had not been dismissed, the State would not have been able to show that Bauer was liable for TC's possession of a firearm under the complicity statute.

[12] The Court of Appeals did not address whether TC was an "innocent or irresponsible" person; since the record is insufficient for us to make that determination, we do not address it either. Bauer notes, however, that TC did plead guilty to criminal reckless endangerment in a separate case, which has a mens rea of recklessness, not innocence.

just any crime. *State v. Cronin*, 142 Wn.2d 568, 579, 14 P.3d 752 (2000); *State v. Roberts*, 142 Wn.2d 471, 510-11, 14 P.3d 713 (2000). Using that same narrow interpretation here, we find evidence of such mens rea was lacking. Bauer may have been negligent about leaving loaded guns out in the presence of children. TC may have been negligent about enabling a gun enclosed in a backpack to discharge. Bauer's negligence was thus not the same as the culpability required for "the crime"; it might have been equally negligent, but not as to the same act, result, and balancing of costs and benefits. Any negligence on Bauer's part thus does not meet the definition of culpability for "the crime" required by RCW 9A.08.020(2)(a). Since any negligence on his part was not "culpability . . . sufficient for the commission of the crime," *id.*, Bauer cannot be liable under prong (2)(a).

Second, there is a difference between "caus[ing]" a particular result and "caus[ing]" another actor to engage in conduct—and the latter is what RCW 9A.08.020(2)(a) requires. *State v. Chester*, a case much cited by Bauer, illustrates this distinction. 133 Wn.2d 15, 940 P.2d 1374 (1997). There, we analyzed the meaning of "cause" in a different statute, RCW 9.68A.040(1)(b), that criminalizes "caus[ing] a minor to engage in sexually explicit conduct." We held that to "cause" a child to engage in sexually explicit behavior "requires some affirmative act of assistance, interaction, influence or communication on the part of a

19

defendant which initiates and results in a child's display of sexually explicit conduct." *Chester*, 133 Wn.2d at 22. The legislature probably intended "cause" to mean the same thing in the statute at issue here, RCW 9A.08.020(2)(a), that criminalizes "caus[ing] an innocent or irresponsible person to engage in [illegal] conduct." But there is no evidence of any such interaction here that would permit a finding that Bauer "caused" TC to take a gun to school. *See id.*; HART & HONORÉ, *supra*, at 363-64, 368 (discussing the significant difference between causing a result and causing another actor to engage in behavior); *see also id.* at 367 ("'causing' a person to act refers to a species of the genus 'inducing' or 'instigating'").

We hold that the Court of Appeals erred in determining that Bauer could be liable under RCW 9A.08.020(2)(a).

## CONCLUSION

The legislature defined the crime of third degree assault to reach a person who "[w]ith criminal negligence, causes bodily harm to another person by means of a weapon or other instrument or thing likely to produce bodily harm." RCW 9A.36.031(1)(d). Bauer asserts that the State has failed to make a prima facie case that his conduct of leaving guns around his house loaded and accessible to invited children "caused" the bodily harm here. We agree. Although causation in fact is the same in criminal and civil cases, legal causation is not. Our case law suggests

that legal causation does not extend as far in criminal cases as it does in tort cases, and even our civil cases do not extend liability as far as the State seeks to do in this case. We therefore reverse the decision of the Court of Appeals.

_____

WE CONCUR:

_____

_____

_____

_____

_____

_____

No. 88559-1

GONZÁLEZ, J. (dissenting)—Douglas Bauer kept multiple loaded guns unsecured throughout his house. These weapons were easily accessible to his girl friend's minor children, including TC, a nine-year-old boy who frequently visited and sometimes stayed the night. Unsupervised, TC put one of Bauer's handguns into his backpack. Two days later, that gun, still in TC's backpack, discharged in a classroom, seriously injuring one of TC's classmates. Bauer did not notice his handgun was missing until after the shooting. The majority believes that because nine-year-old TC did not have permission to take the weapon and because two days elapsed between the taking and the subsequent shooting, Bauer's carelessness could not, as a matter of law, be the cause of the victim's serious injury. *See* majority at 15, 20. I disagree. The delay in Bauer noticing that his gun was missing is itself evidence of his negligence. Though a jury may well find Bauer's actions to be too attenuated from the victim's injury to impose criminal liability as a matter of fact, whether criminal liability can attach as a matter of law is a policy question for the legislature. The legislature has

1

made this policy judgment in RCW 9A.36.031(1)(d). It is neither unreasonable nor unwise to allow a jury to decide if it was the firearm owner's criminal negligence that caused the handgun to be brought to school, to be accidentally discharged, and to seriously injure the young victim. Since the majority believes otherwise, I respectfully dissent.

The issue before us is a novel one. As the majority notes, no Washington appellate court has weighed in on the lawful extent of legal cause in the context of the third degree assault statute. *Id.* at 10-12. But that "[t]his court has found no Washington case upholding . . . liability . . . where the accused did not actively participate in the immediate physical impetus of harm" is not a compelling argument against whether the legislature intended to criminalize this sort of carelessness. *Id.* at 12. It is well settled that legal causation "rests on policy considerations as to how far the consequences of defendant's acts should extend. It involves a determination of whether liability *should* attach as a matter of law given the existence of cause in fact." *Hartley v. State*, 103 Wn.2d 768, 779, 698 P.2d 77 (1985). In the context of criminal law, that question is for the legislature, and it has answered it.

Given scientific research on the topic, it is clear the legislative purpose of RCW 9A.36.031(1)(d) would be best served by letting a jury decide whether a firearm owner is liable for an unintended shooting that is the result of a young child picking up a carelessly stored handgun. In one study, scientists monitored numerous small groups of 8- to 12-year-old boys in a room that had two water pistols concealed in one

2

drawer and an actual handgun concealed in another. Geoffrey A. Jackman et al.,

*Seeing Is Believing: What Do Boys Do When They Find a Real Gun?*, 107

PEDIATRICS 1247, 1247-48 (2001).[1] The researchers limited the study to boys in this

age range because they are "a high-risk group for unintentional fire-arm injury." *Id.* at

1248. The scientists found that 75 percent of the boys found the handgun within 15

minutes, 63 percent of these boys handled it, and 33 percent of them actually pulled

the trigger enough to discharge the weapon. *Id.* Overall, the "results suggest that 8-

to 12-year-old boys cannot be trusted to refrain from handling a handgun if they

encounter one outside the immediate supervision of an adult." *Id.* at 1250.

A different study, which measured the association of household firearm storage

practices and the risk of unintentional and self-inflicted injuries associated with child

or adolescent access to firearms in the home, also supports the conclusion that we

should not preclude liability on legal causation grounds. *See* David C. Grossman et

al., *Gun Storage Practices and Risk of Youth Suicide and Unintentional Firearm*

*Injuries*, 293 JAMA 707, 708-10 (2005).[2] There, researchers found that "storing

household guns as locked, unloaded, or separate from the ammunition [was]

associated with significant reductions in the risk of unintentional and self-inflicted

firearm injuries and deaths among adolescents and children." *Id.* at 714. In other

words, and not surprisingly, this survey revealed that guns that were kept loaded,

---

[1] Available at http://pediatrics.aappublications.org/content/107/6/1247.full.pdf (subscription required).
[2] Available at http://jama.jamanetwork.com/data/Journals/JAMA/4963/JOC32162.pdf.

unsecured, and accessible to children were involved in accidents far more frequently than those that were not. *Id.*

Given both science and common sense, I find the legislature's inclusion of criminal negligence as a proper basis for an assault charge as permitting a jury to determine a handgun owner's liability in situations such as this. The jury would be able to consider all of the relevant circumstances, including the age and maturity of the child, the child's familiarity with firearms, and the precautions the firearm owner took or did not take to determine if the firearm owner's conduct amounts to criminal negligence. What the majority believes to be the intervening actions and attenuating circumstances in this case are the natural and foreseeable consequences of the very danger that Bauer's careless actions created.

TC's picking up the handgun and Bauer's failure to notice are not intervening causes in the ultimate injury. Like the majority, I do not believe "Bauer's act of gun ownership" or "[h]is decision to keep loaded weapons around the house" is in itself criminal. *See* majority at 11-12. But it need not be. Third degree assault predicated on criminal negligence does not require an underlying illegal act or an intentional act but merely criminal negligence that results in bodily harm. RCW 9A.36.031(1)(d). By its plain language, the purpose of the statute is to impose liability when injury is caused by criminal negligence, not criminal intent or felonious action. *Id.* A defendant can face liability for criminal negligence "when he or she fails to be aware of a substantial risk that a wrongful act may occur and his or her failure to be aware of

4

such substantial risk constitutes a gross deviation from the standard of care that a reasonable person would exercise in the same situation." RCW 9A.08.010(1)(d). TC's actions are not distinct from Bauer's carelessness for legal causation purposes. When Bauer's gun ownership and method of storage is combined with the known presence of an unsupervised nine-year-old boy, especially when coupled with a failure to notice the unsecured weapon was missing, a jury, not a judge, should decide if this created a substantial risk that a wrongful act may occur.

Finding that TC's taking the gun without Bauer's permission was an intervening action, as the majority does, tacitly shifts the ultimate responsibility for the victim's injury to a nine-year-old child. Not only do I find this troubling in light of behavioral science, but also I agree with the legislature that "[c]hildren of eight and under twelve years of age are presumed to be incapable of committing crime." RCW 9A.04.050. Though this presumption may be removed, *see id.*, and I do not seek to address the appropriateness of the liability imposed on TC, it is unsettling that TC, as a matter of law, will face more criminal culpability in this situation than Bauer.

At its core, this case comes down to considerations of sound policy. Bauer kept a loaded, unsecured handgun in a room that an unsupervised nine-year-old boy could access freely. Bauer also did not notice that this loaded weapon had been taken for two days as TC toted it in his backpack to and from school. Given that both science and common sense strongly suggest that Bauer was in the best position to prevent the injury to TC's classmate and that his conduct was its primary cause, I would not

5

preclude Bauer's liability on legal causation grounds and would allow a jury to resolve the matter.

With these observations, I respectfully dissent.

González, J.

Fairhurst. J.

Stephens. J.