FILED
COURT OF APPEALS DIV I
STATE OF WASHINGTON

2018 SEP 24 AM 10: 40

IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON

| | | |
|---|---|---|
| STATE OF WASHINGTON, | ) | No. 76356-3-I |
| Respondent, | ) ) | |
| | ) | DIVISION ONE |
| v. | ) ) | |
| MARLON IUPATI LEMAFA, | ) | UNPUBLISHED OPINION |
| Appellant. | ) ) | FILED: September 24, 2018 |
| | ) | |

BECKER, J. — Appellant Marlon Lemafa was convicted of two counts of first degree assault. He challenges the sufficiency of the evidence underlying his conviction. We affirm.

The assaults occurred on December 13, 2015, outside a sports bar in Kent, Washington. Lemafa was involved in a chaotic brawl in the bar's parking lot. The scene was captured by several surveillance cameras.

Johnny Nav and Kim Ung spent the night socializing and playing pool at the bar. The fighting broke out around the time Nav and Ung were leaving. At trial, the prosecutor played exhibit 16, a composite of the surveillance video recordings. A police witness identified Lemafa, Nav, Ung, and other individuals on the video recordings and pointed out their movements. Nav saw people attacking a man lying on the ground. Nav, who thought he recognized the man,

intervened and separated him from his assailants, allowing him to escape. Nav realized he did not know the man and began to walk back to his car.

At this point, Nav exchanged words with Lemafa's cousin, Feronita Moe. Moe pushed Nav. Exhibit 16 at 1:40-1:50. Ung attempted to lead Nav away from the confrontation. Lemafa walked up behind Nav and punched him twice in the head, causing Nav to fall to the ground. Exhibit 16 at 2:40-2:45. Lemafa then punched Ung, who also fell to the ground, hitting his head against the curb as he fell. Lemafa kicked and punched Nav and Ung as they lay on the ground. Exhibit 16 at 3:40-4:05. Moe and her boyfriend Tony Talaga joined in, unleashing their own punches and kicks upon the prone Nav and Ung. Exhibit 16 at 3:40-4:05.

When the police arrived, they found Nav and Ung unconscious and bleeding in the parking lot. The assault ruptured Nav's left eye. He is now blind in the eye and will likely need to have it surgically removed. Nav's injuries left him unable to return to his job, unable to drive at night, and suffering from migraine headaches. He was still undergoing physical and speech therapy at the time of the trial. Ung suffered a concussion and a broken nose that required a metal plate to be inserted into his sinus area. The assault ruptured Ung's tympanic membrane, leaving him with partial hearing loss in his right ear.

The jury convicted Lemafa. His offenses were "serious violent offenses" as defined by RCW 9.94A.030(46)(v) requiring the court to impose consecutive sentences. RCW 9.94A.589(1)(b). The court imposed consecutive standard range sentences, totaling 222 months' imprisonment.

ANALYSIS

Sufficiency of the Evidence

"A person is guilty of assault in the first degree if he or she, with intent to inflict great bodily harm . . . . assaults another and inflicts great bodily harm." RCW 9A.36.011(1)(c). Great bodily harm is defined as "bodily injury which creates a probability of death, or which causes significant serious permanent disfigurement, or which causes a significant permanent loss or impairment of the function of any bodily part or organ." RCW 9A.04.110(1)(c).

Lemafa does not dispute that Nav's ruptured eye is great bodily harm. He argues that there is insufficient evidence to establish that he inflicted it. To determine if sufficient evidence supports a conviction, we consider whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt. State v. Rich, 184 Wn.2d 897, 903, 365 P.3d 746 (2016).

Lemafa, Moe, and Talaga all participated in the attack on Nav. The State could not pinpoint exactly when Nav's eye was ruptured. One of the State's medical witnesses, Dr. Eissa Hanna, testified that Nav's injury is one that typically results from multiple blows. Absent evidence that directly establishes that it was a blow from Lemafa that ruptured Nav's eye, Lemafa claims the State lacked proof that he was the proximate cause of Nav's injury. Lemafa argues that he could be convicted only as an accomplice. Before a defendant can be convicted as an accomplice, the court must instruct the jury on accomplice liability. State v. Davenport, 100 Wn.2d 757, 764, 675 P.2d 1213 (1984).

Because the court did not instruct the jury on accomplice liability, Lemafa argues that his conviction must be reversed for insufficient evidence of proximate cause.

To find that Lemafa was the proximate cause of Nav's injuries, the jury did not have to find that Lemafa was the sole cause. State v. Christman, 160 Wn. App. 741, 754, 249 P.3d 680, review denied, 172 Wn.2d 1002 (2011). "Although a defendant's conduct is not a proximate cause if some other cause is a sole or superseding cause, it can be a proximate cause if another cause is merely a concurrent cause. The same harm can have more than one proximate cause." Christman, 160 Wn. App. at 756; cf. State v. Bauer, 180 Wn.2d 929, 940, 329 P.3d 67 (2014) (holding that legal causation may not be found in a criminal case if "the accused did not actively participate in the immediate physical impetus of harm"). The jury watched video of Lemafa delivering two violent punches to the left side of Nav's face when Nav was facing the other direction. Nav fell to the ground, and Lemafa proceeded to kick and punch him as he lay defenseless. Lemafa's conduct was "not only intentional, but felonious, and capable of causing harm in and of itself." Bauer, 180 Wn.2d at 939. Considering the force of Lemafa's blows and the fact that the blows were to the area near Nav's left eye, a reasonable fact finder could conclude that Lemafa had criminal liability as a principal for causing Nav's ruptured eye. The lack of an instruction on accomplice liability is irrelevant.

As to the charge of first degree assault against Ung, Lemafa argues that Ung's hearing loss did not amount to significant permanent loss or impairment as required to prove great bodily harm. Lemafa claims a reasonable fact finder

would conclude that Ung's partial hearing loss was only temporary based on Ung's testimony that he was unsure whether the damage was permanent and that his hearing had improved somewhat by the time of the trial.

Lemafa overlooks Ung's testimony that his fractured tympanic membrane left him with a constant beeping noise in his ear. The noise was still present at the time of trial, nine months after the assault. Ung said he had been told there were no further medical treatments available to help with the problem. Based on this testimony, a reasonable fact finder could conclude that Ung's hearing impairment was significant and permanent. We conclude sufficient evidence supported the assault charges.

## Prosecutorial Misconduct

Lemafa contends that a new trial is required due to the misrepresentation of evidence in the State's closing argument. The burden of establishing the impropriety of the prosecuting attorney's comments and their prejudicial effect rests with the defendant. State v. McKenzie, 157 Wn.2d 44, 52, 134 P.3d 221 (2006). The comments at issue concern whether the impairment of Ung's hearing loss was permanent. The prosecutor stated the beeping noise in Ung's ear was "not going away":

> But you heard him testify about the damage to his hearing in his right ear, how it was muffled for a long time. It was kind of muffled is how he described it, almost holding his hand up to his ear. And that now, to this day, he hears beeping when he lays down when it's quiet. And that is not going away. That will be there. And the evidence has shown he had no problems with his hearing before that night.

Lemafa did not object to this argument.

On appeal, Lemafa contends the evidence does not support a finding that the hearing impairment was permanent. He argues that the prosecutor committed misconduct by misrepresenting the evidence.

"Where the defense fails to object to an improper comment, the error is considered waived 'unless the comment is so flagrant and ill-intentioned that it causes an enduring and resulting prejudice that could not have been neutralized by a curative instruction to the jury.'" McKenzie, 157 Wn.2d at 52, quoting State v. Brown, 132 Wn.2d 529, 561, 940 P.2d 546 (1997). Because Lemafa did not object, he has waived the claim of prosecutorial misconduct.

Lemafa attempts to overcome his lack of objection to the prosecutor's remarks by recharacterizing the issue as whether defense counsel provided ineffective assistance by failing to object. He has not shown that prosecutorial misconduct implicates the ineffectiveness of counsel doctrine. See State v. Fisher, 165 Wn.2d 727, 757 n.8, 202 P.3d 937 (2009). Review under the standards for prosecutorial misconduct is sufficient to determine whether the prosecutor's remarks warrant reversal.

In any event, the prosecutor's statements did have a basis in Ung's testimony. Ung testified that he suffered from a constant beeping noise, his hearing had not returned to normal after nine months, and doctors informed him there was no further medical treatment available to remedy his hearing problems.

Affirmed.

WE CONCUR:

_Becker, J._

_Andrus, J._        _____