IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON

| STATE OF WASHINGTON, | No. 78655-5-I |
| Respondent, | DIVISION ONE |
| v. | UNPUBLISHED OPINION |
| ALFRED EUGENE WILLIAMS, | |
| Appellant. | |

CHUN, J. — Alfred Williams pleaded guilty to two counts of second degree assault with a firearm enhancement and to witness tampering. The trial court sentenced him to 51 months of confinement, with 15 months for each of the three charges, running concurrently, followed by a 36-month firearm enhancement. Williams's Statement of Defendant on Plea of Guilty to Felony Non-Sex Offense (Plea Statement) indicates incorrectly that the standard sentencing range for the witness tampering charge is 12 months and a day to 16 months; but at sentencing, the State properly stated that the standard sentencing range is 9 to 12 months. Also, Williams's plea agreement states the correct range.

Williams argues that because his Plea Statement misstates the standard sentencing range for the witness tampering charge, he is entitled to withdraw his guilty plea. Williams also asserts he is entitled to withdraw his guilty plea because the trial court erred in denying his motion for a competency evaluation. Finally, Williams claims that the trial court erroneously denied his motion to

Citations and pin cites are based on the Westlaw online version of the cited material.

dismiss the charges, filed on the ground that the State failed to present a prima facie case of guilt against him. For the reasons discussed herein, we affirm.

## I. BACKGROUND

Williams invited Eric Brown and Sheila Williams to his home.[1] Sheila is Williams's former partner. According to a police investigation, when Brown and Sheila arrived, Williams was waiting outside his home holding a shotgun. Williams fired the shotgun in Brown and Sheila's direction. The two fled unhurt.

The State charged Williams with two counts of first degree assault with firearm enhancements and, in the alternative, two counts of second degree assault with firearm enhancements. The assault charges involving Sheila carried domestic violence allegations.

Before trial, representing himself, Williams asserted to the trial court that he had suffered from mental illness for at least 15 years. Williams claimed that he had been off his medication "for a long time," was "very insane," and not competent to stand trial. Williams also submitted documentation from King County Correctional Facility, wherein he asserted that he had previously received benefits for a mental disability. Initially, it seemed unclear to the trial court whether Williams meant to assert a not guilty by reason of insanity defense or a right to a competency evaluation. Ultimately, the trial court treated Williams's presentation as a motion for a competency evaluation, and listened to recordings

---

[1] For clarity, we refer to Sheila Williams as Sheila. We intend no disrespect.

of previous proceedings before a different judge.[2] The trial court asked Williams what charges he faced, and how much time he faced for those charges; Williams purported to be unable to provide a response, but did indicate that he knew he would have a jury trial. The trial court also asked Williams to articulate the reasons why he would not be competent to stand trial. In response, Williams stated:

> I have bad dreams. I wake up and think people are stalking me or trying to hurt me all the time. I just—I can't separate reality from fiction, you know what I'm saying? And sometimes it get the best of me. I think something is going to happen, it's not. I prejudge something I'm not supposed to judge. I think something['s] going to happen and it just—it just—I couldn't tell you sometimes from reality, sometimes I can't grasp it.

The trial court determined that, while Williams apparently suffered from sleep and anxiety issues, he was competent to stand trial and denied the motion.

After trial began, Williams made a call to Sheila from jail, wherein he encouraged her not to testify against him. The trial court declared a mistrial and the State filed a witness tampering charge against Williams.

Williams pleaded guilty to two counts of second degree assault, one with domestic violence allegations and a firearm enhancement. The Plea Statement indicates that the standard sentencing range for the assault charges is 13 to 17 months. Williams also pleaded guilty to witness tampering. The Plea Statement

---

[2] The trial court listened to recordings from April 11, 16, and 26 of 2018. At the April 11 hearing, Williams moved to represent himself, and the trial court performed a colloquy, wherein Williams asserted that he understood the charges against him and their maximum sentences. At the April 16 hearing, Williams withdrew his motion to proceed self-represented. A report of proceedings from the April 26 hearing does not appear to be in record.

inaccurately indicates that the standard sentencing range for the witness tampering charge is 12 months and a day to 16 months. However, the plea agreement, by referencing the scoring form for the charge, properly lists the standard range as 9 to 12 months.

Furthermore, the agreed sentencing recommendation states that Williams would serve 15 months for each assault charge and 12 months for the witness tampering charge, all running concurrently. The agreed recommendation further states that Williams would then serve 36 months for the firearm enhancement, totaling 51 months of confinement.

At sentencing, the State properly stated that the standard sentencing range for the witness tampering charge is 9 to 12 months. The trial court sentenced Williams to 51 months; 15 months for his three offenses, running concurrently, followed by a 36-month firearm enhancement. Williams appeals.

## II. ANALYSIS

A. Sentencing Consequences of Plea

Williams argues his guilty plea is constitutionally invalid because his Plea Statement misstates the standard sentencing range for his witness tampering charge. The State argues that Williams's plea is constitutionally valid because, notwithstanding the inaccuracy, the Plea Statement properly states the overall sentencing consequences of his plea. Additionally, the State argues that Williams cannot demonstrate prejudice. We conclude that Williams waived the right to withdraw his plea on this basis.

Williams raises this issue relating to his guilty plea for the first time on appeal. Under RAP 2.5(a)(3), a defendant may claim a manifest error affecting a constitutional right for the first time on appeal. "[A] claim that a guilty plea pursuant to a plea agreement was involuntary due to a misunderstanding about the standard range sentence is the kind of constitutional error that RAP 2.5(a)(3) encompasses." State v. Walsh, 143 Wn.2d 1, 8, 17 P.3d 591 (2001). The State does not contest Williams's ability to assert this error for the first time on appeal.[3] However, Williams waived his right to assert this claim.

In State v. Mendoza, the defendant's plea statement erroneously indicated that his third degree child molestation charge carried a 51 to 60 month standard sentencing range. 157 Wn.2d 582, 584, 141 P.3d 49 (2006). A sentencing report properly indicated that the charge carried a 41 to 54 month standard

---

[3] The State argues that, under State v. Buckman, because Williams moves to withdraw his guilty plea after the trial court entered judgment, we must treat that motion as a collateral attack. 190 Wn.2d 51, 60, 409 P.3d 193 (2018) (treating a post-sentence motion to the trial court to withdraw a guilty plea as a collateral attack on the defendant's conviction). "On collateral review, when the claimed error is a misstatement of sentencing consequences, we require the petitioner to show actual and substantial prejudice." Buckman, 190 Wn.2d at 60 (internal quotation marks and citation omitted). However, Williams's argument comes not in a motion to the trial court, but in a direct appeal of his conviction. In such a case, we do not treat the argument as a collateral attack on the conviction. See Walsh, 143 Wn.2d at 8–10, 17 P.3d 591 (2001) (concluding a defendant may withdraw their guilty plea on the ground that they were misadvised as to the sentencing consequences of their conviction, even where they seek to do so for the first time on appeal); see also Buckman, 190 Wn.2d at 88 (Gordon McCloud, J., dissent) ("Buckman probably would have been entitled to automatic relief if he had sought to withdraw his guilty plea in a direct appeal because he claims he did not discover the error until after sentencing."); State v. Rhodes, No. 77580-4-I, Slip Op. at 6 n.1 (Wash. Ct. App. Apr. 29, 2019) (Unpublished) http://www.courts.wa.gov/opinions/pdf/775804.pdf (for the first time on appeal, defendant sought to withdraw guilty plea on ground that he was misadvised as to sentencing consequences; the State conceded that Buckman's collateral attack analysis did not apply).

range.  Mendoza, 157 Wn.2d at 584.  At sentencing, the State explained that it had erroneously calculated the defendant's offender score, leading to the misstatement of the charge's standard sentencing range in the plea statement.  Mendoza, 157 Wn.2d at 584–85.  The defendant did not move to withdraw his guilty plea on this ground at sentencing, but did seek to do so on appeal.  Mendoza, 157 Wn.2d at 592.  The court concluded that the defendant had waived his right to challenge his plea on this basis, because the State informed him of the less onerous sentencing range before he was sentenced, and he had an opportunity to withdraw the plea.  Mendoza, 157 Wn.2d at 591–92.

As in Mendoza, the State informed Williams of the less onerous sentencing range for the witness tampering charge at sentencing, and also in the scoring form attached to the plea agreement.  Mendoza does not require the State to specifically address the error, but only to inform the defendant of the proper range.  157 Wn.2d at 591 ("[W]hen the defendant is informed of the less onerous standard range before [they are] sentenced and given the opportunity to withdraw the plea, the defendant may waive the right to challenge the validity of the plea.").  Williams had opportunity, prior to the trial court entering his sentence, to withdraw his plea on this basis.  Thus, we determine he waived his opportunity to do so.

B.  Competency Evaluation

Williams argues, in the alternative, that we must allow him to withdraw his guilty plea because the trial court improperly denied his motion for a competency

evaluation.  The State disagrees.  We conclude that the trial court did not abuse its discretion in denying his motion for a competency evaluation.

The due process clause of the United States Constitution's Fourteenth Amendment guarantees an accused person the right not to stand trial unless they are legally competent.  State v. Wicklund, 96 Wn.2d 798, 800, 638 P.2d 1241 (1982) (citing Drope v. Missouri, 420 U.S. 162, 172, 95 S. Ct. 896, 904, 43 L. Ed. 2d 103 (1975)).  Likewise, under RCW 10.77.050, "[n]o incompetent person shall be tried, convicted, or sentenced for the commission of an offense so long as such incapacity continues."  Under Washington law, we apply a two-part test to assess a criminal defendant's legal competency: "(1) whether the defendant understands the nature of the charges; and (2) whether [they are] capable of assisting in [their] defense."  In re the Pers. Restraint of Fleming, 142 Wn.2d 853, 862, 16 P.3d 610 (2001).

If a defendant is not competent to stand trial, they cannot effectively enter a guilty plea.  Fleming, 142 Wn.2d at 864.  "The factors a trial judge may consider in determining whether or not to order a formal inquiry into the competence of an accused include the defendant's appearance, demeanor, conduct, personal and family history, past behavior, medical and psychiatric reports and the statements of counsel."  Fleming, 142 Wn.2d at 863 (internal quotation marks and citation omitted).  Additionally, where the defendant has not previously been found incompetent, they bear the burden of establishing their

incompetence. State v. P.E.T., 174 Wn. App. 590, 599, 300 P.3d 456 (2013), citing Grannum v. Berard, 70 Wn.2d 304, 607, 422 P.2d 812 (1967).

We review a trial court's competency determination for abuse of discretion. Fleming, 142 Wn.2d at 864. "A court abuses its discretion only when an order is manifestly unreasonable or based on untenable grounds." State v. Ortiz-Abrego, 187 Wn.2d 394, 402, 387 P.3d 638 (2017) (internal quotation marks and citation omitted). Additionally, "[i]f the issue of competency is fairly debatable, failure to order a subsequent evaluation does not violate RCW 10.77.060, and the trial court did not abuse its discretion." State v. McCarthy, 193 Wn.2d 792, 803, 446 P.3d 167 (2019) (internal quotation marks omitted).

Williams points to his claims at trial that he had suffered from mental illness for 15 years, that he "hears noises," "does not function well", is "very insane," and cannot "separate reality from fiction." He also claims, without independent corroboration, that he has been on disability due to his psychological condition. From such, he claims that due process required the court to order a competency evaluation.

The trial court did not abuse its discretion in denying Williams's motion. First, Williams's claims of mental illness lack independent corroboration. Even if such evidence existed, the fact of a defendant's mental illness does not necessitate the conclusion that they are legally incompetent. See State v. Lord, 117 Wn.2d 829, 901–904, 822 P.2d 177 (1991) (affirming a trial court's denial of

8

a motion for a competency evaluation, where defendant claimed to have "a conversation with the Lord and the devil and the devil asked him to drink a cup of his own blood to prove his innocence."), abrogated on other grounds by State v. Schierman, 192 Wn.2d 577, 438 P.3d 1063 (2018). Further, while Williams purported to be unable to respond when the trial court asked him, in the context of assessing whether it should order a competency evaluation, if he understood the charges against him and his potential sentence, the trial court clearly weighed those statements against his indications in a previous colloquy that he did understand such. Finally, since Williams had not previously been found incompetent, he bore the burden of establishing his incompetence. From the record before us, we cannot conclude the trial court abused its discretion. Thus, we deny Williams's motion to withdraw his guilty plea on this ground.

C. Knapstad Motion

Williams argues the trial court improperly denied his motion to dismiss his charges, filed on the ground that the State presented insufficient evidence to establish a prima facie case of his guilt. The State argues that Williams never made a motion to dismiss the charges on this ground and that, under RAP 2.2(a), pretrial motions to dismiss charges cannot be appealed. We agree with the State.

Under State v. Knapstad,[4] "a defendant may move to dismiss a criminal charge on the ground that there are no disputed material facts and the

---

[4] 107 Wn.2d 346, 729 P.2d 48 (1986).

undisputed facts do not establish a prima facie case of guilt as a matter of law."
State v. Bauer, 180 Wn.2d 929, 935, 329 P.3d 67 (2014). Williams claims that
he moved to dismiss the charges against him under Knapstad, but no such
motion appears in the portions of the record he cites. But even assuming
Williams brought such a motion, it would not be appealable. "A defendant has no
right to appeal a denial of the motion to dismiss," and only the State may appeal
a trial court's decision on a Knapstad motion. Knapstad, 107 Wn.2d at 357;
RAP 2.2(a)–(b).[5] Additionally, CrR 8.3(c)(3), which governs procedure for such
motions, bars defendants from appealing the motion's denial. Williams's
Knapstad argument fails.

D. Motions to Dismiss

After the trial court proceedings, Williams submitted correspondence to
the Court of Appeals claiming that the trial court violated his right to speedy trial,
that a judge erroneously lifted an order protecting him from the alleged victim,
that the trial court denied him reasonable bail, that we should dismiss the
charges against him because of outrageous governmental conduct, that he had a
right to disqualify the trial judge, and that he has a Fifth Amendment right under
Brady v. Maryland[6] and a Sixth Amendment right under Crawford v. Washington[7]
to interview the victims and all the State's witnesses. Williams's correspondence

---

[5] Since we determine that Knapstad and RAP 2.2 bar Williams's motion, we decline to address the State's alternative argument that Williams waived the right to appeal the denial of the Knapstad motion because he pleaded guilty.

[6] 373 U.S. 83, 83 S. Ct. 1194, 10 L. Ed. 2d 215 (1963).

[7] 541 U.S. 36, 124 S. Ct. 1354, 158 L. Ed. 2d 177 (2004).

is not addressed either by the State or by his appellate briefing.  Neither are these motions and arguments supported by citations to the record, or meaningful legal argument, so we decline to consider them.  See Cowiche Canyon Conservancy v. Bosley, 118 Wn.2d 801, 809, 828 P.2d 549 (1992) (arguments not supported by legal authority or citation to the record need not be considered).

We affirm.

Chun, J.

WE CONCUR: