

This opinion was
filed for record
at 8am on 7-11-19

Susan L. Carlson
Supreme Court Clerk

# IN THE SUPREME COURT OF THE STATE OF WASHINGTON

| | | |
|---|---|---|
| STATE OF WASHINGTON, | ) | |
| | ) | |
| Respondent, | ) | No. 95947-1 |
| | ) | |
| v. | ) | |
| | ) | |
| JOSHUA CANE FRAHM, | ) | Filed ___JUL 1 1 2019___ |
| | ) | |
| Petitioner. | ) | |
| | ) | |

OWENS, J. — A drunk driver struck and disabled another vehicle, then fled into the early morning darkness. A Good Samaritan stopped to help the vehicle that had been struck. While helping, the Good Samaritan sustained fatal injuries due to a secondary accident. We are asked whether, as a matter of law, the drunk driver's acts were too attenuated from the Good Samaritan's death for criminal liability to attach. We conclude that the drunk driver's acts were the legal cause of the Good Samaritan's death because those acts were criminal, caused direct harm as well as risk of further harm, and occurred close in time and location to the ultimate harm that befell the Good Samaritan. We further conclude that the issue of intervening, superseding cause was proper for the jury to determine as a matter of actual cause using a reasonable foreseeability standard and that the

vehicular homicide conviction is supported by sufficient evidence. Accordingly, we hold

that the drunk driver's acts proximately caused the Good Samaritan's death, and we affirm.

FACTS AND PROCEDURAL HISTORY

Shortly before 6:00 a.m. on Sunday, December 7, 2014, Joshua Cane Frahm was

intoxicated and drove his truck erratically at a high rate of speed on several freeways in

Vancouver, Washington. Two different motorists called 911 to report Frahm's dangerous

driving, which included cutting off a vehicle and nearly rear-ending several others. Frahm

was going 85 m.p.h. when he rear-ended a vehicle driven by Steven Klase. The impact

propelled Klase's vehicle into the median barrier and caused it to spin and ricochet, leaving

it disabled across the left and middle lanes. Frahm fled the scene without stopping to render

aid to Klase, who was seriously injured in the collision.

Richard Irvine was driving the same direction on the same freeway that morning and

witnessed the collision. Irvine pulled his sedan over onto the right shoulder of the freeway,

activated his emergency flashers, exited his sedan, and crossed the freeway on foot to render

aid to Klase, who remained trapped inside his vehicle. Irvine called 911 from his cell phone

and was on the line with emergency dispatchers when Klase's vehicle was struck a second

time by a minivan. The driver of the minivan had shifted into the left lane when he saw the

flashers of Irvine's car on the right shoulder, but the driver did not notice Klase's disabled

vehicle in the still-dark morning until it was too late to avoid hitting it. The second impact

to Klase's vehicle from the minivan propelled Klase's vehicle into Irvine, throwing Irvine

approximately 20 feet across the roadway and causing him to sustain severe brain and spinal

2

injuries. Irvine died 12 days later as a result of his injuries and pneumonia.

The State charged Frahm with half a dozen crimes associated with the incident, including vehicular homicide. The case proceeded to a jury trial. The trial court allowed the issue of intervening, superseding cause to go to the jury. The trial court instructed the jury according to 11A *Washington Practice: Washington Pattern Jury Instructions: Criminal* 90.08, at 278 (4th ed. 2016) (WPIC), which stated in relevant part:

> [I]f a proximate cause of the death was a new independent intervening act of the deceased or another which the defendant, in the exercise of ordinary care, should not reasonably have anticipated as likely to happen, the defendant's act is superseded by the intervening cause and is not a proximate cause of the death. . . .
>
> However, if in the exercise of ordinary care, the defendant should reasonably have anticipated the intervening cause, that cause does not supersede the defendant's original act and the defendant's act is a proximate cause. It is not necessary that the sequence of events or the particular injury be foreseeable. It is only necessary that the death fall within the general field of danger which the defendant should have reasonably anticipated.

Clerk's Papers (CP) at 106 (Instr. 12). Frahm objected to that instruction.

The jury found Frahm guilty of vehicular homicide, as well as vehicular assault, hit-and-run, conspiracy to commit perjury, and false reporting. Frahm appealed his convictions, arguing, among other claims, that the State presented insufficient evidence to support his conviction for vehicular homicide. The Court of Appeals affirmed, and we granted review. *State v. Frahm*, 191 Wn.2d 1026 (2018).

## ISSUE

Did Frahm's acts proximately cause Irvine's death?

a.     Were Frahm's acts the legal cause of Irvine's death?

3

b.      Does sufficient evidence support Frahm's vehicular homicide conviction

when the jury was charged with the issue of intervening, superseding cause and instructed to

apply a reasonable foreseeability standard?

ANALYSIS

Frahm's challenge to his vehicular homicide conviction has taken different forms

during his appeal. Though Frahm objected to use of the pattern jury instruction at trial,

he did not assign error to the instruction on appeal. Rather, Frahm argued that

insufficient evidence supported his conviction. In his petition for review, Frahm argued

that the foreseeability standard applied by the Court of Appeals erroneously heightened

the threshold for a superseding cause. In his supplemental brief, Frahm challenged use of

a tort-derived foreseeability standard to determine liability for vehicular homicide, as

well as sufficiency of the evidence underlying his conviction. Properly before us is

whether sufficient evidence supports Frahm's conviction for vehicular homicide.

When reviewing a challenge to the sufficiency of evidence, we view the evidence

in the light most favorable to the State and determine whether "any rational trier of fact

could have found guilt beyond a reasonable doubt." *State v. Salinas*, 119 Wn.2d 192,

201, 829 P.2d 1068 (1992). We review questions of law de novo. *State v. Johnson*, 128

Wn.2d 431, 443, 909 P.2d 293 (1996).

*Proximate Cause*

Vehicular homicide is defined as follows:

(1) When the death of any person ensues within three years as a proximate
result of injury proximately caused by the driving of any vehicle by any

4

person, the driver is guilty of vehicular homicide if the driver was operating a motor vehicle:

      (a) While under the influence of intoxicating liquor or any drug, as defined by RCW 46.61.502; or

      (b) In a reckless manner; or

      '(c) With disregard for the safety of others.

RCW 46.61.520. Vehicular homicide is a strict liability offense. *See State v. Rivas*, 126 Wn.2d 443, 451-53, 896 P.2d 57 (1995). "[T]he conduct of the defendant must be both (1) the actual cause, and (2) the 'legal' . . . cause" of the death. *Id.* at 453. In Washington, unlike other jurisdictions, we use the term "proximate cause" to refer to both prongs of causation together. *See Hartley v. State*, 103 Wn.2d 768, 777, 698 P.2d 77 (1985) ("Washington law recognizes two elements to proximate cause: Cause in fact and legal causation"); *State v. Bauer*, 180 Wn.2d 929, 936 n.5, 329 P.3d 67 (2014). To determine whether Frahm's acts proximately caused Irvine's death, we must determine whether Frahm's acts were both the legal cause and the actual cause of the death.

Actual cause, or cause in fact, "refers to the 'but for' consequences of an act—the physical connection between an act and an injury." *Hartley*, 103 Wn.2d at 778. Legal cause presents a more nuanced inquiry:

> Legal causation . . . rests on policy considerations as to how far the consequences of [a] defendant's acts should extend. It involves a determination of whether liability *should* attach as a matter of law given the existence of cause in fact. . . . [D]etermination of legal liability will be dependent on 'mixed considerations of logic, common sense, justice, policy, and precedent.'

*Id.* at 779 (quoting *King v. City of Seattle*, 84 Wn.2d 239, 250, 525 P.2d 228 (1974))

While actual cause is a question of fact generally left to the jury to "determin[e] what

actually occurred," *id.* at 778, legal cause "is a question of law for the court based on policy considerations." *Colbert v. Moomba Sports, Inc.*, 163 Wn.2d 43, 51, 176 P.3d 497 (2008). "The focus in the legal causation analysis is whether, as a matter of policy, the connection between the ultimate result and the act of the defendant is too remote or insubstantial to impose liability." *Schooley v. Pinch's Deli Market, Inc.*, 134 Wn.2d 468, 478-79, 951 P.2d 749 (1998). "'[A]s to cause in fact, tort and criminal situations are exactly alike.'" *Bauer*, 180 Wn.2d at 936 (quoting *State v. Dennison*, 115 Wn.2d 609, 624 n.15, 801 P.2d 193 (1990)). As to legal causation, however, tort and criminal situations differ. *Id.* at 940.

 a. *Legal Cause*

In *Bauer*, we recognized and established that as a rule, "'legal cause' in criminal cases differs from, and is narrower than, 'legal cause' in tort cases in Washington." *Id.*

> Commentators and courts recognize that criminal law and tort law serve different purposes and therefore have different principles of legal causation. "[W]ith crimes, where the consequences of a determination of guilt are more drastic . . . it is arguable that a closer relationship between the result achieved and that intended or hazarded should be required." "The wider doctrines of causation currently applied in tort law should not be extended to criminal law. . . . [I]n criminal law, . . . it is not normally enough merely to prove that [the] accused occasioned the harm; he must have 'caused' it in the strict sense."

*Id.* at 936-37 (alterations in original) (citations omitted) (quoting 1 WAYNE R. LAFAVE, SUBSTANTIVE CRIMINAL LAW § 6.4(c) at 472 (2d ed. 2003); H.L.A. HART & TONY HONORÉ, CAUSATION IN THE LAW 350-51 (2d ed. 1985)). We examined the case law and "found no Washington case upholding [criminal] liability . . . where the accused did not

actively participate in the immediate physical impetus of the harm." *Id.* at 940.

Bauer was charged with third degree assault when he left loaded guns unsecured in his home, and his girlfriend's child "'swiped'" one of those guns and two days later carried it to school where it discharged, injuring another student. *Id.* at 933. We held "legal causation is not satisfied" as to Bauer "[b]ecause legal causation in civil cases is broader and more flexible than it is in criminal cases." *Id.* at 942.

We distinguished *Bauer* from cases where a defendant's "initial act was not only intentional, but felonious, and capable of causing harm in and of itself." *Id.* at 939. For example, we contrasted *Bauer* with *State v. Leech*, 114 Wn.2d 700, 705, 790 P.2d 160 (1990), in which an arsonist's actions proximately caused the death of a firefighter who died in the course of responding to the arson fire. We held that Leech was criminally liable for the firefighter's death despite the fact that the arson fire was but one of the causes of the death. *Id.* We emphasized that Leech "started the fire—clearly an intentional criminal act capable of causing harm in and of itself." *Bauer*, 180 Wn.2d at 939. We also contrasted *Bauer* with *State v. Perez-Cervantes*, 141 Wn.2d 468, 6 P.3d 1160 (2000), in which the defendant stabbed the victim several days before the victim died. We held that Perez-Cervantes was criminally liable for the victim's death despite the fact that drug use also contributed to the death. *Id.* at 480. Again, we emphasized that Perez-Cervantes "performed an intentional criminal act—stabbing—that directly caused harm." *Bauer*, 180 Wn.2d at 939. In contrast, Bauer's act—owning guns and keeping them loaded around his home—was "not felonious or criminal." *Id.*

We conclude that Frahm's acts of hitting Klase's vehicle while intoxicated and fleeing the scene were felonious and directly caused harm in and of themselves. This case is similar to *Leech*. There, as here, the defendant criminally caused a harm that the victim died while responding to. Furthermore, Frahm's criminal acts were volitional. The record establishes that Frahm drove aggressively and nearly rear-ended several other vehicles prior to hitting Klase, while the crime of hit-and-run requires a knowing mens rea. RCW 46.52.020; *State v. Vela*, 100 Wn.2d 636, 673 P.2d 185 (1983).

By contrast, the facts of the case at bar are readily distinguishable from *Bauer*. Bauer had no knowledge that his girlfriend's child had taken the gun. Here, Frahm was acutely aware that he had caused harm and initiated a substantial risk of further harm when he fled after disabling Klase's vehicle. In *Bauer*, the gun discharged and injured another student two days after the child swiped the gun. *See* 180 Wn.2d at 941 (noting "'remoteness in time between the criminal act and the injury [may be] dispositive to the question of legal cause . . .'" (quoting *Kim v. Budget Rent A Car Sys., Inc.*, 143 Wn.2d 190, 205, 15 P.3d 1283 (2001))). Here, Irvine sustained fatal injuries within minutes of Frahm striking Klase's vehicle and fleeing the scene. Bauer's act was neither criminal nor directly caused harm. Here, Frahm's acts—hitting Klase's vehicle while intoxicated and fleeing the scene—were criminal and caused direct harm.

Though in *Bauer* we stated that we had found no Washington case upholding criminal liability "where the accused did not actively participate in the immediate physical impetus of the harm," that inquiry is misleading in the context of crimes of

8

criminal negligence, such as vehicular homicide. 180 Wn.2d at 940. Rather, a defendant acts with criminal negligence "when he or she fails to be aware of a substantial risk that a wrongful act may occur and his or her failure to be aware of such substantial risk constitutes a gross deviation from the standard of care that a reasonable person would exercise in the same situation." RCW 9A.08.010(1)(d). Here, Frahm grossly deviated from the standard of care by disregarding the substantial risk of further injury, which did in fact occur minutes later.

This is a case where, even under *Bauer*, "liability *should* attach as a matter of law" because Frahm's acts were criminal, caused direct harm as well as risk of further harm, and occurred close in time and location to the ultimate harm that befell Irvine. *Hartley*, 103 Wn.2d at 779. Accordingly, we hold legal causation for vehicular homicide satisfied as to Frahm.

> b.    *Actual Cause*

Frahm contends that insufficient evidence supports his vehicular homicide conviction because an intervening, superseding cause relieved him of criminal liability for Irvine's death. He argues that Irvine's act of crossing the freeway on foot to render aid to Klase and/or the secondary collision by the minivan constituted intervening, superseding causes of Irvine's death. "[A]n intoxicated defendant may still avoid responsibility for a death which results from his or her driving if the death is caused by a superseding, intervening event." *Rivas*, 126 Wn.2d at 453. Frahm also argues that use of a reasonable foreseeability standard to determine an intervening, superseding cause is

9

erroneous in the context of criminal liability for vehicular homicide.

The most helpful definition of intervening, superseding cause is drawn from tort law. *See Campbell v. ITE Imperial Corp.*, 107 Wn.2d 807, 811-14, 733 P.2d 969 (1987). An intervening cause is a "force that actively operates to produce harm to another after the actor's act or omission has been committed." *Klein v. Pyrodyne Corp.*, 117 Wn.2d 1, 17 n.7, 810 P.2d 917, 817 P.2d 1359 (1991). "If the intervening cause is strong enough to relieve the wrongdoer of any liability, it becomes a *superseding cause*." BLACK'S LAW DICTIONARY 265 (10th ed. 2014) (defining "intervening cause"). "'Whether an act may be considered a superseding cause sufficient to relieve a defendant of liability depends on whether the intervening act can reasonably be foreseen by the defendant; only intervening acts which are not reasonably foreseeable are deemed superseding causes.'" *Crowe v. Gaston*, 134 Wn.2d 509, 519, 951 P.2d 1118 (1998) (internal quotation marks omitted) (quoting *Cramer v. Dep't of Highways*, 73 Wn. App. 516, 520, 870 P.2d 999 (1994)). An intervening act will not constitute a superseding cause if the original actor "'should have realized that a third person might so act.'" *Campbell*, 107 Wn.2d at 813 (quoting RESTATEMENT (SECOND) OF TORTS § 447(a) (AM. LAW INST. 1965)).

Whether an intervening act rises to the level of a superseding cause is an issue of actual cause. *Maltman v. Sauer*, 84 Wn.2d 975, 982, 530 P.2d 254 (1975); *McCoy v. Am. Suzuki Motor Corp.*, 136 Wn.2d 350, 358, 961 P.2d 952 (1998). We trust juries to make that determination. However, that factual question may be determined as a matter of law if reasonable minds could not differ. *See McCoy*, 136 Wn.2d at 358; *Kim*, 143 Wn.2d at

10

203. In other words, "[a]n intervening act may be so highly extraordinary or unexpected as to fall outside the realm of reasonable foreseeability as a matter of law." *Micro Enhancement Int'l, Inc. v. Coopers & Lybrand, LLP*, 110 Wn. App. 412, 431, 40 P.3d 1206 (2002).

In *State v. Roggenkamp*, 153 Wn.2d 614, 106 P.3d 196 (2005), we affirmed a vehicular homicide conviction despite the fact that the driver of the vehicle that the defendant struck was intoxicated and pulled out in front of the defendant. We concluded that the struck vehicle driver's "actions were, at most, a concurring cause, not a superseding cause of the accident." *Id.* at 631 (stating that a "concurring cause does not shield a defendant from a vehicular homicide conviction"). Sufficient evidence existed for the trial court to find that given the clear residential character of the road, "[a] vehicle pulling out . . . (whether driven by an intoxicated driver or not) was an occurrence that should have been reasonably foreseeable to Roggenkamp." *State v. Roggenkamp*, 115 Wn. App. 927, 946, 64 P.3d 92 (2003), *aff'd*, 153 Wn.2d at 630-31.

Frahm in effect argues that the tort-derived foreseeability standard does not properly distinguish an intervening act from a superseding cause for purposes of criminal liability for vehicular homicide because of "*Bauer*'s requirement of narrower legal cause in criminal law than in tort." Pet'r's Suppl. Br. at 15. However, we expressly noted in *Bauer* that "'as to *cause in fact,* tort and criminal situations are *exactly alike.*'" 180 Wn.2d at 936 (emphasis added) (quoting *Dennison*, 115 Wn.2d at 624 n.15). Reasonable foreseeability distinguishes a superseding cause from a mere intervening event. Because

11

that distinction presents a question of cause in fact for a jury, not a question of legal cause for a court, the foreseeability standard passes muster under *Bauer*.

Frahm's arguments that the Court of Appeals applied erroneous foreseeability standards are similarly unavailing. Frahm argues that the Court of Appeals contravened *Roggenkamp* by restricting the threshold for superseding cause to situations in which the foreseeability of the act that caused the harm was "'highly extraordinary or unexpected.'" Pet. for Review at 10. However, we conclude that the Court of Appeals properly employed *Micro Enchancement*'s "highly extraordinary or unexpected" standard to determine when a court should take a question of intervening, superseding cause from a jury as a matter of law. 110 Wn. App. at 431. Frahm also argued that the Court of Appeals adopted a new "'general field of danger'" foreseeability standard for liability for vehicular homicide and that the Court of Appeals based its affirmance on that new standard. Pet. for Review at 11. However, the "general field of danger" language was drawn directly from the pattern jury instruction, which the jury received at trial. WPIC 90.08; CP at 106. Thus, the Court of Appeals applied proper standards.

Here, Irvine's act of crossing the freeway on foot to help Klase and the secondary collision by the minivan were intervening events because both occurred after Frahm's criminal acts of hitting Klase's vehicle while intoxicated and then fleeing the scene. The jury weighed the evidence and determined that neither intervening event superseded Frahm's criminal acts as the actual cause of Irvine's death. The question of foreseeability was properly given to the jury because reasonable minds could have differed as to

12

determination of that issue. Viewing the evidence in the light most favorable to the State, a rational trier of fact could have found guilt beyond a reasonable doubt. Accordingly, we hold that sufficient evidence supports Frahm's vehicular homicide conviction.

## CONCLUSION

We conclude as a matter of law that Frahm's acts were the legal cause of Irvine's death because his acts were criminal, caused direct harm as well as risk of further harm, and occurred close in time and location to the ultimate harm that befell Irvine. We also conclude that the jury was properly charged with determining whether any intervening event superseded Frahm's acts as the actual cause of Irvine's death, that the jury properly applied a reasonable foreseeability standard to make that determination, and that sufficient evidence supports Frahm's vehicular homicide conviction. Accordingly, we hold that Frahm's acts proximately caused Irvine's death. We affirm the Court of Appeals.

WE CONCUR:

*State v. Frahm (Joshua C.)*

No. 95947-1

MADSEN, J. (dissenting)—This is a vehicular homicide case—a criminal case, not a tort case. The majority holds that defendant's actions of hitting a car on the freeway and fleeing the accident scene without stopping, thereby leaving the struck disabled car on the freeway, proximately caused the death of a passerby who subsequently stopped to render aid and later died from injuries sustained in a second automobile collision at the scene. I disagree with the majority's conclusion that "as a matter of law" defendant's acts were the "legal cause" of the passerby's death. Majority at 13. For the reasons explained below, in my view, the passerby's death is simply too attenuated from defendant's hit and run to result in legal causation in the present context.

In this vehicular homicide case, Joshua Frahm, while intoxicated and driving his truck, collided with a car on the freeway, injuring the car's driver, Steven Klase. Frahm continued on without stopping, leaving Klase's disabled car on the freeway. Richard Irvine, seeing the disabled car on the freeway, stopped to help the disabled car's driver. Irvine pulled his vehicle onto the freeway's right shoulder, walked across the freeway, and called 911. While Irvine was talking to the dispatcher, another vehicle (a minivan) struck Klase's disabled car, propelling it into Irvine, who later died from his injuries.

Frahm was charged with several crimes, including vehicular homicide for the death of Irvine. A jury convicted Frahm of this charge.

On appeal, Division Two of the Court of Appeals rejected Frahm's insufficient evidence challenge to his vehicular homicide conviction, determining that events occurring after Frahm fled the scene (i.e., the acts of Irvine and the van driver) were foreseeable. Thus, such intervening acts did not amount to superseding causes that would break the chain of proximate causation resulting in Frahm's liability for Irvine's death. The majority agrees; I do not. In my view, it is untenable that Frahm's rear-ending a vehicle on the freeway proximately caused the death of Irvine under the facts as above described.

Both the majority and the Court of Appeals view this case as analogous to *State v. Roggenkamp*, 115 Wn. App. 927, 64 P.3d 92 (2003), *aff'd*, 153 Wn.2d 614, 106 P.3d 196 (2005), a vehicular homicide and assault case. In my view, while *Roggenkamp* is instructive, it does not support the majority's view. In *Roggenkamp*, the defendant drove on a two-lane county road with a posted speed limit of 35 miles per hour. Defendant entered the oncoming traffic lane to pass another vehicle and reached a speed of approximately 70 miles per hour. While defendant was still in the oncoming lane, a vehicle turned into that lane from an intersection. Defendant collided with that vehicle, seriously injuring three passengers and killing another. The driver of the vehicle that defendant hit had a blood alcohol content over the legal limit. *Id.* at 931-34.

2

*Roggenkamp* held that the drunk driver's actions were not a superseding cause of the accident for two reasons. First, the drunk driver's action of turning left onto a two-lane residential roadway was reasonably foreseeable; and, second, Roggenkamp's recklessness was ongoing when the drunk driver pulled out of the intersection. *Id.* at 946-47. In the present case, Division Two concluded, "Here, as in *Roggenkamp*, the acts of the [van] driver and a passerby were foreseeable." *State v. Frahm*, 3 Wn. App. 2d 812, 821, 418 P.3d 215, *review granted*, 191 Wn.2d 1026 (2018). And "a reasonable jury could find beyond a reasonable doubt that Frahm's rear-ending Klase's vehicle proximately caused Irvine's death." *Id.* at 822. The majority agrees that "[t]he question of foreseeability was properly given to the jury" and holds that "Frahm's acts proximately caused Irvine's death." Majority at 12, 13. I disagree with the majority's conclusion.

Here, the jury received Washington Pattern Jury Instruction 90.08 concerning vehicular homicide and causation as follows:

> If you are satisfied beyond a reasonable doubt that the driving of the defendant was a proximate cause of the death, it is not a defense that the conduct of the deceased or another may also have been a proximate cause of the death.
>
> However, if a proximate cause of the death was a new independent intervening act of the deceased or another which the defendant, in the exercise of ordinary care, should not reasonably have anticipated as likely to happen, the defendant's act is superseded by the intervening cause and is not a proximate cause of the death. An intervening cause is an action that actively operates to produce harm to another after the defendant's act or omission has been committed.
>
> However, if in the exercise of ordinary care, the defendant should reasonably have anticipated the intervening cause, that cause does not supersede the defendant's original act and the defendant's act is a

3

proximate cause. It is not necessary that the sequence of events or the particular injury be foreseeable. *It is only necessary that the death fall within the general field of danger which the defendant should have reasonably anticipated.*

Clerk's Papers at 106 (Instr. 12) (emphasis added); 11A WASHINGTON PRACTICE: WASHINGTON PATTERN JURY INSTRUCTIONS: CRIMINAL 90.08, at 278 (4th ed. 2016). Here, the *general field of danger* that Frahm should have reasonably anticipated is further injury to the disabled vehicle and its occupants that he left stranded on the freeway, not injury to a passerby who walked across the freeway and was struck by the disabled car, after that disabled car was struck by yet another vehicle on the freeway.

By contrast, in *Roggenkamp*, defendant's recklessly speeding vehicle struck another car causing injury and death to that car's occupants. The defendant's reckless conduct directly caused the injuries sustained and such reckless conduct was ongoing at the point in time when the injuries were sustained. That is not the case here. Frahm's conduct of striking a car with his truck and leaving the disabled car in the freeway was completed and over when the passerby (Irvine) later received injuries in the second automobile collision. Also, as discussed below, there is simply no sufficient connection between Frahm and the passerby's death to impose criminal liability. While "but for" causation is satisfied, legal causation is not.

Unlike the facts in *Roggenkamp*, the chain of events in this case is simply too *attenuated* to impose *criminal* liability on Frahm for the death of the passerby. This result finds support in *State v. Bauer*, 180 Wn.2d 929, 942, 329 P.3d 67 (2014). There, this court explained that while criminal law and tort law share the same "but for"

4

causation, the requirement for legal causation to impose criminal liability is more demanding than in the tort context. Surveying the relevant case law and commentary on this issue, the *Bauer* court opined as follows:

> This court, in agreement with commentators and other jurisdictions, has observed that "as to cause in fact [(i.e., 'actual' or 'but for' causation)], tort and criminal situations are exactly alike." [*State v. Dennison*, 115 Wn.2d 609, 624 n.15, 801 P.2d 193 (1990) (citing 1 WAYNE R. LAFAVE & AUSTIN W. SCOTT, JR., SUBSTANTIVE CRIMINAL LAW § 3.12, at 397 n.31 (1986))].
>
> Legal causation, however, is different. Commentators and courts recognize that criminal law and tort law serve different purposes and therefore have different principles of legal causation. "[W]ith crimes, where the consequences of a determination of guilt are more drastic . . . it is arguable that a closer relationship between the result achieved and that intended or hazarded should be required." 1 WAYNE R. LAFAVE, SUBSTANTIVE CRIMINAL LAW § 6.4(c) at 472 (2d ed. 2003). "The wider doctrines of causation currently applied in tort law should not be extended to criminal law. . . . [I]n criminal law, . . . it is not normally enough merely to prove that [the] accused occasioned the harm; he must have 'caused' it in the strict sense." H.L.A. HART & TONY HONORÉ, CAUSATION IN THE LAW 350-51 (2d ed. 1985); *see also* JEROME HALL, GENERAL PRINCIPLES OF CRIMINAL LAW 254-55 (2d ed. 1960) (noting that causation in tort may be much broader than causation in criminal law).
>
> Most states that have addressed the question agree that legal causation is defined more narrowly in criminal law than it is in tort law. The Pennsylvania Supreme Court explained, in the context of felony murder:
>
>> A closer causal connection between the felony and the killing than the proximate-cause theory normally applicable to tort cases should be required because of the extreme penalty attaching to a conviction for felony murder and the difference between the underlying rationales of criminal and tort law. The former is intended to impose punishment in appropriate cases while the latter is primarily concerned with who shall bear the burden of a loss.
>
> *Commonwealth ex rel. Smith v. Myers*, 438 Pa. 218, 232, 261 A.2d 550 (1970). Cases from multiple jurisdictions, both state and federal, support this principle. *E.g.*, *United States v. Schmidt*, 626 F.2d 616, 618 n.3 (8th Cir. 1980) ("[W]e believe that proof of some more direct causal connection

between act and result should be required in criminal cases than would be sufficient to uphold liability in tort."); *Campbell v. State*, 293 Md. 438, 450-51, 444 A.2d 1034 (1982) ("[T]he tort liability concept of proximate cause is generally too broad and comprehensive to be appropriate in a criminal proceeding . . . ."); *People v. Kibbe*, 35 N.Y.2d 407, 413, 321 N.E.2d 773, 362 N.Y.S.2d 848 (1974) ("We subscribe to the requirement that the defendants' actions must be a *sufficiently direct cause* of the ensuing death before there can be any imposition of criminal liability, and recognize, of course, that this standard is greater than that required to serve as a basis for tort liability."); *People v. Scott*, 29 Mich. App. 549, 558, 185 N.W.2d 576 (1971) ("In criminal prosecutions there must be a more direct causal connection between the criminal conduct of the defendant and the homicide charged than is required by the tort liability concept of proximate cause.").

180 Wn.2d at 936-38 (most alterations in original) (footnote omitted). In *Bauer*, this court ultimately concluded that criminal liability did not attach where "the accused did not actively participate in the immediate physical impetus of harm." *Id.* at 940 (quoting with approval, Hart & Honoré, *supra*, at 326 for the proposition that "'[W]here [the first actor's conduct] was not sufficient [to bring about the harm] without the intervention of the second actor . . . most decisions relieve the first actor of responsibility'" (most alterations in original)). That is precisely the circumstance in Frahm's case. Frahm's striking of Klase's car was not sufficient to bring about Irvine's death. Irvine's death resulted from the minivan striking Klase's car, propelling it into Irvine, who sustained injuries from that impact that were ultimately fatal more than a week later. Without Irvine leaving his vehicle and crossing the freeway on foot and the minivan subsequently striking Klase's disabled car, Irvine would not have been injured.

The majority finds this case analogous to *State v. Leech*, 114 Wn.2d 700, 790 P.2d 160 (1990), in which this court held an arsonist criminally liable for the death of a

6

firefighter who died while responding to the fire started by the arsonist. The majority

concludes that similarly here, "Frahm's acts of hitting Klase's [car] while intoxicated and

fleeing the scene were felonious and directly caused harm in and of themselves."

Majority at 8. While I agree that Frahm's drunken hit-and-run "directly caused harm,"

such direct harm was to *Klase*, not to Irvine. As discussed, under *Bauer*, the legal

causation required to impose criminal liability necessitates a direct causal connection that

is simply not present here. In Frahm's case, while "but for" causation is satisfied, legal

causation is not. This alone is a sufficient basis for reversing the Court of Appeals and

overturning Frahm's vehicular homicide conviction.

Additionally, I disagree with the majority's view that "[w]hether an intervening

act rises to the level of a superseding cause is an issue of *actual cause* [for the trier of

fact]." Majority at 10 (emphasis added). The majority cites two cases as support:

*Maltman v. Sauer*, 84 Wn.2d 975, 530 P.2d 254 (1975), and *McCoy v. American Suzuki

Motor Corp.*, 136 Wn.2d 350, 961 P.2d 952 (1998). Both cases, however, addressed

application of the rescue doctrine and foreseeability in the tort context and, thus, have no

application here.[1]

Elsewhere, Washington courts have opined that the issue of foreseeability "is not

properly framed within the 'cause in fact' element of proximate cause." *Bullard v. Bailey*,

---

[1] The rescue doctrine is a tort concept that "allows an injured rescuer to sue the party which caused the danger requiring the rescue in the first place." *McCoy*, 136 Wn.2d at 355 (citing *Maltman*, 84 Wn.2d at 976-77). The rescue doctrine reflects "a societal value judgment that rescuers should not be barred from bringing suit for knowingly placing themselves in danger to undertake a rescue." *Id.* at 356. But, as noted, the present case concerns imposition of criminal sanction, not compensation.

7

91 Wn. App. 750, 758, 959 P.2d 1122 (1998). "Instead, it is part of determining whether

[a defendant's] actions are the 'legal cause' of [a plaintiff's] damages." *Id.*

> [The] question of foreseeability "is in no way one of causation, and never
> arises until causation has been established. It is rather one of the
> fundamental policy of the law, as to whether the defendant's responsibility
> should extend to such results."

*Id.* (quoting WILLIAM L. PROSSER, HANDBOOK OF THE LAW OF TORTS 250 (4th ed. 1971)).

Further, concerning the *McCoy* case, the *Washington Practice* series notes:

> In cases brought by a plaintiff who was injured in the course of
> trying to rescue an individual who was placed in peril by the defendant's
> negligence, Washington courts have added an additional inquiry as part of
> the "cause in fact" analysis. . . .
> It should be noted that *intervening forces are usually considered as
> part of the question of legal cause*, rather than cause in fact. However, this
> additional element of cause in fact may be a *unique feature of rescue cases*,
> and hence *can be appropriately considered in such cases as part of
> analyzing both prongs of the proximate cause test*.

16 DAVID K. DEWOLF & KELLER W. ALLEN, WASHINGTON PRACTICE: TORT LAW AND

PRACTICE § 5:3 (4th ed. 2013) (emphasis added) (citation and footnote omitted).

In any event, whatever *Maltman* and *McCoy* say about proximate cause and

foreseeability in the context of applying the rescue doctrine, those cases are limited to the

tort arena that they addressed and, thus, have no application in the present criminal

context. In my view, as discussed above, *Bauer* provides the appropriate analysis in this

criminal context; and the stronger direct causal connection required to find legal

causation, as explained in *Bauer*, is simply not present.

For these reasons, I dissent.

_Madsen, J._